# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
May 7, 2003 Session

# CITY OF BRENTWOOD, TENNESSEE, ET AL. v. METROPOLITAN BOARD OF ZONING APPEALS, ET AL.

**Appeal from the Chancery Court for Davidson County**
**No. 00-4012-I      Irvin H. Kilcrease, Jr., Chancellor**

---

**No. M2002-00514-COA-R3-CV - Filed February 3, 2004**

---

This appeal involves the efforts of the City of Brentwood to stop the construction of a billboard located in Davidson County. After Nashville's zoning administrator granted a building permit for the billboard, the City of Brentwood appealed to the Metropolitan Board of Zoning Appeals. When the Board affirmed the building permit, the City of Brentwood and four neighboring property owners filed a petition for common-law writ of certiorari in the Chancery Court for Davidson County seeking judicial review of the Board's decision. The trial court granted the motions to dismiss filed by the Board and the owner of the billboard on the ground that the City of Brentwood and the individual property owners lacked standing. We have determined that the trial court erred by determining that the City of Brentwood and its public officials lacked standing to seek judicial review of the Board's decision.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Reversed In Part and Remanded**

WILLIAM C. KOCH, JR., J., delivered the opinion of the court, in which BEN H. CANTRELL, P.J., M.S., and PATRICIA J. COTTRELL, J., joined.

James R. Tomkins, Nashville, Tennessee, and Roger A. Horner, Brentwood, Tennessee, for the appellants, City of Brentwood, Tennessee, Phil Hardeman, William J. Vaughn, Wesley Lamoureaux, and Clarence Reynolds.

Karl F. Dean, Director of Law, J. Brooks Fox and John L. Kennedy, Nashville, Tennessee, for the appellees, The Metropolitan Board of Zoning Appeals and The Metropolitan Government.

Lawrence P. Leibowitz and Pamela P. Gibson, Knoxville, Tennessee, for the appellee, Lamar Advertising Company.

## OPINION

### I.

On May 10, 2000, Nashville's zoning administrator issued a building permit to Lamar Advertising Company to construct a 14' by 48' billboard on property owned by Corky's Restaurant near the intersection of Old Hickory Boulevard and Franklin Road. The property is located entirely

in Davidson County but is close to the boundary line between Davidson County and the City of Brentwood which is in Williamson County. The City of Brentwood is one of the upscale, affluent cities ringing Nashville, and the particular intersection where the billboard is to be located is a gateway to Brentwood from the north.

Brentwood has expended large sums to establish its "Franklin Road corridor program" for the purpose of enhancing the area surrounding this intersection.[1] It objected to Lamar Advertising's billboard because it was inconsistent with its capital improvements to the Franklin Road corridor. On September 1, 2000, Brentwood filed an appeal from the zoning administrator's decision with the Metropolitan Board of Zoning Appeals. It asserted that the proposed billboard violated Metropolitan Government of Nashville & Davidson County, Tennessee Code § 17.32.150(B)(13) (2001) ("Metro Code") which prohibited billboards along public streets or highways designated as a scenic route.

The Board held a hearing on November 2, 2000. After presentations by both Brentwood and Lamar Advertising, the Board decided that the billboard was actually "along" Franklin Road rather than Old Hickory Boulevard and, therefore, that it did not violate Metro Code § 17.32.150(B)(13) because Franklin Road had not been designated as a scenic route. Accordingly, the Board affirmed issuing Lamar Advertising a building permit.

On December 29, 2000, Brentwood[2] and four private property owners[3] filed a petition for common-law writ of certiorari in the Chancery Court for Davidson County seeking judicial review of the Board's decision. The trial court permitted Lamar Advertising to intervene as a party. Thereafter, the Board and Lamar Advertising filed Tenn. R. Civ. P. 12.02(6) motions asserting that all the petitioners lacked standing to seek review of the Board's November 2, 2000 decision. The trial court granted the motion and dismissed the petition. All the petitioners have appealed.

## II.
### THE STANDARD OF REVIEW

The sole purpose of a Tenn. R. Civ. P. 12.02(6) motion is to test the sufficiency of the complaint, not the strength of the plaintiff's evidence. *Doe v. Sundquist*, 2 S.W.3d 919, 922 (Tenn. 1999); *Bell ex rel. Snyder v. Icard, Merrill, Cullis, Timm, Furen & Ginsburg, P.A.*, 986 S.W.2d 550, 554 (Tenn. 1999). It requires the courts to review the complaint alone, *Daniel v. Hardin County Gen. Hosp.*, 971 S.W.2d 21, 23 (Tenn. Ct. App. 1997), and to look to the complaint's substance rather than its form. *Kaylor v. Bradley*, 912 S.W.2d 728, 731 (Tenn. Ct. App. 1995). Dismissal under Tenn. R. Civ. P. 12.02(6) is warranted only when the alleged facts will not entitle the plaintiff to relief or when the complaint is totally lacking in clarity and specificity. *Dobbs v. Guenther*, 846 S.W.2d 270, 273 (Tenn. Ct. App. 1992).

---

[1] The program included installing decorative street lights and sidewalks, planting trees, and adopting a restrictive sign ordinance.

[2] In addition to the City of Brentwood, the petition named Brentwood's city manager and the members of its Board of Commissioners as petitioners. For simplicity's sake, we will refer to all these parties as "Brentwood."

[3] Wesley Lamoureux resides and owns property in the City of Brentwood in Williamson County. Phil Hardeman, William Vaughn, and Clarence Reynolds own property in Davidson County near Old Hickory Boulevard.

A Tenn. R. Civ. P. 12.02(6) motion admits the truth of all the relevant and material factual allegations in the complaint but asserts that no cause of action arises from these facts. *Winchester v. Little*, 996 S.W.2d 818, 821-22 (Tenn. Ct. App. 1998); *Smith v. First Union Nat'l Bank*, 958 S.W.2d 113, 115 (Tenn. Ct. App. 1997). Accordingly, courts reviewing a complaint being tested by a Tenn. R. Civ. P. 12.02(6) motion must construe the complaint liberally in favor of the plaintiff by taking all factual allegations in the complaint as true, *Stein v. Davidson Hotel*, 945 S.W.2d 714, 716 (Tenn. 1997), and by giving the plaintiff the benefit of all the inferences that can be reasonably drawn from the pleaded facts. ROBERT BANKS, JR. & JUNE F. ENTMAN, TENNESSEE CIVIL PROCEDURE § 5-6(g), at 254 (1999). On appeal from an order granting a Tenn. R. Civ. P. 12.02(6) motion, we must likewise presume that the factual allegations in the complaint are true, and we must review the trial court's legal conclusions regarding the adequacy of the complaint without a presumption of correctness. *Bell ex rel. Snyder v. Icard, Merrill, Cullis, Timm, Furen & Ginsburg, P.A.*, 986 S.W.2d at 554; *Stein v. Davidson Hotel*, 945 S.W.2d at 716.

## III.
### THE BOARD'S AND LAMAR ADVERTISING'S WAIVER OF THE CHALLENGE TO STANDING

Brentwood and the individual property owners make a technical argument that the Board and Lamar Advertising waived their respective rights to question their standing to challenge the construction of the billboard. They assert that the record does not show that either the Board or Lamar Advertising questioned Brentwood's standing during the November 2, 2000 hearing. The Board counters that it was not required to raise the issue because it was the adjudicator, not a party to the proceeding. Lamar Advertising responds that it did, in fact, raise the issue of standing.

This question is complicated by the Board's inability to provide a "complete transcript of the proceedings in the cause, containing also all the proof submitted before the board or commission" as required by Tenn. Code Ann. § 27-9-109(a) (2000). This obligation falls squarely on the Board's shoulders, not the parties'. *Lewis v. Bedford County Bd. of Zoning App.*, No. M2003-00537-COA-R3-CV, 2004 WL 63439, at *5 (Tenn. Ct. App. Jan. 13, 2004). While the Board customarily prepares a transcript of its proceedings, it did not do so in this case because the recorder malfunctioned. Accordingly, the Board's secretary prepared a "narrative" of the proceeding. The narrative contains a summary of the evidence presented by the parties and states that "[t]he appellants made their arguments with considerable dialogue with the Board." However, it does not specifically state that standing was discussed.

We have determined that the Board is not in a position to question Brentwood's standing to seek judicial review of its decision. The Board, as a governmental entity, has the prerogative to determine whether applicants appearing before it are entitled to invoke its authority. It may and should decline to consider applications filed by persons or entities who do not meet the applicable legal requirements. By addressing the merits of Brentwood's application, the Board must necessarily have concluded that Brentwood qualified as an "applicant" under Metro Code § 17.40.275 (2001). Having made this determination, the Board cannot later insulate its decisions from judicial review by asserting that Brentwood has no standing to seek judicial review of an administrative proceeding in which it actively participated with the Board's permission.

Lamar Advertising's challenge to Brentwood's standing is on a different footing. Parties to administrative proceedings must raise all objections to procedural errors during the hearing in order to preserve these questions for later appellate review. *McClellan v. Board of Regents*, 921 S.W.2d 684, 690 (Tenn. 1996). Thus, to raise the issue of Brentwood's standing to file the petition for common-law writ of certiorari, Lamar Advertising must have argued to the Board that Brentwood did not have standing to request the Board to review the zoning administrator's decision.

Brentwood does not assert that Lamar Advertising failed to raise this issue during the proceedings before the Board. Rather, it states only that the record does not show that Lamar Advertising raised the issue. The difference is not so subtle that it escapes us. Brentwood had the burden of proving that Lamar Advertising waived its opportunity to raise the standing question. *Tallent v. Tennessee Farmers Mut. Ins. Co.*, 785 S.W.2d 339, 344 (Tenn. 1990); *Smith v. Smith*, 989 S.W.2d 346, 348 (Tenn. Ct. App. 1998). In light of the admittedly incomplete record and Brentwood's failure to contradict Lamar Advertising's vigorous assertion that it raised the question of standing before the Board, we have concluded that Brentwood has failed to demonstrate that Lamar Advertising waived its right to question its standing to seek judicial review of the Board's decision.

## IV.
### BRENTWOOD'S STANDING TO SEEK JUDICIAL REVIEW OF THE BOARD'S DECISION

Brentwood takes issue with the trial court's conclusion that it lacked standing to seek judicial review of the Board's decision regarding Lamar Advertising's billboard because it had not suffered a particularized injury. It asserts that the trial court erred because it meets the statutory requirements for filing a petition for common-law writ of certiorari and because the interests it is seeking to protect are within the zone of interests protected by Nashville's zoning ordinance.

### A.

The doctrine of standing is used to determine whether a particular plaintiff is entitled to judicial relief. *Knierim v. Leatherwood*, 542 S.W.2d 806, 808 (Tenn. 1976); *Garrison v. Stamps*, 109 S.W.3d 374, 377 (Tenn. Ct. App. 2003). It requires the court to determine whether the plaintiff has alleged a sufficiently personal stake in the outcome of the litigation to warrant a judicial resolution of the dispute. *SunTrust Bank v. Johnson*, 46 S.W.3d 216, 222 (Tenn. Ct. App. 2000); *Browning-Ferris Indus. of Tennessee, Inc. v. City of Oak Ridge*, 644 S.W.2d 400, 402 (Tenn. Ct. App. 1982). To establish standing, a plaintiff must show: (1) that it has sustained a distinct and palpable injury, (2) that the injury was caused by the challenged conduct, and (3) that the injury is one that can be addressed by a remedy that the court is empowered to give. *City of Chattanooga v. Davis*, 54 S.W.3d 248, 280 (Tenn. 2001); *In re Youngblood*, 895 S.W.2d 322, 326 (Tenn. 1995); *Metropolitan Air Research Testing Auth., Inc. v. Metropolitan Gov't*, 842 S.W.2d 611, 615 (Tenn. Ct. App. 1992).

The primary focus of a standing inquiry is on the party, not on the merits of the claim. *Valley Forge Christian Coll. v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 484, 102 S. Ct. 752, 765 (1982); *Petty v. Daimler/Chrysler Corp.*, 91 S.W.3d 765, 767 (Tenn. Ct. App. 2002). Thus, a party's standing does not depend on the likelihood of success of its claim on the merits. *Mayhew v. Wilder*, 46 S.W.3d 760, 767 (Tenn. Ct. App. 2001); *Metropolitan Air*

*Research Testing Auth., Inc. v. Metropolitan Gov't*, 842 S.W.2d at 615. However, because a party's standing may hinge on the nature of its claims, a standing inquiry requires a "careful judicial examination of a complaint's allegations to ascertain whether the particular plaintiff is entitled to an adjudication of the particular claims asserted." *Allen v. Wright*, 468 U.S. 737, 752, 104 S. Ct. 3315, 3325 (1984).

The sort of distinct and palpable injury that will create standing must be an injury to a recognized legal right or interest. In many cases, this right or interest may be created or defined by statute. Thus, in cases where a party is seeking to vindicate a statutory right of interest, the doctrine of standing requires the party to demonstrate that its claim falls within the zone of interests protected or regulated by the statute in question. *Federal Election Comm'n v. Akins*, 524 U.S. 11, 20, 118 S. Ct. 1777, 1783-84 (1998); *Chattanooga Ry. & Light Co. v. Bettis*, 139 Tenn. 332, 337, 202 S.W. 70, 71 (1918); *Jefferson County v. City of Morristown*, No. 03A01-9810-CH-00331, 1999 WL 817519, at *6 (Tenn. Ct. App. Oct. 13, 1999) (No Tenn. R. App. P. 11 application filed).

**B.**

Brentwood's standing to seek judicial review of the Board's decision hinges on the answers to two questions. The first question is whether the applicable statutes and ordinances permit Brentwood to seek judicial review of the Board's decision. The second is whether the interests Brentwood seeks to vindicate are within the zone of interests protected by Nashville's zoning ordinance. The answer to both questions is yes.

**The Statutes and Ordinances**

The statute authorizing appeals to the Board is quite broad. Tenn. Code Ann. § 13-7-206(b) (1999) permits appeals "by any person aggrieved or by any officer, department, board or bureau of the municipality affected by any grant or refusal of a building permit." Similarly, Metro Code § 17.40.275 provides that an "applicant" (a person applying for relief) "may be an owner, optionee, agent, trustee, lessee, government official or department." Neither the statute nor the ordinance expressly limits standing to appeal to the Board to residents of Davidson County, owners of property in Davidson County, or the Metropolitan Government of Nashville and Davidson County and its instrumentalities. Therefore, we will interpret these provisions as we find them – they permit any municipal government officer aggrieved by a decision to grant a building permit to appeal to the Board.

It stands to reason that the scope of the statute defining who may appeal to the board should be the same as the scope of the statute defining who may seek judicial review of a board's decision. After all, persons authorized to appeal to the Board from an adverse decision by the zoning administrator should likewise be authorized to seek judicial review if the Board's decision is not to their liking. Any other conclusion would create an anomalous situation where some persons appealing to the Board would be entitled to judicial review while others would not.

The procedural vehicle for obtaining judicial review of a board of zoning appeals decision is a petition for common-law writ of certiorari.[4] The scope of Tenn. Code Ann. § 27-9-101 (2000), the statute defining who may file these petitions,[5] is, in fact, the same as the scope of Tenn. Code Ann. § 13-7-206(b). It empowers "[a]nyone who may be aggrieved by any final order or judgment of any board or commission functioning under the laws of this state" to seek judicial review of the order or judgment using a common-law writ of certiorari. In addition to this statutory requirement, persons seeking judicial review of a board of zoning appeals decision must have been parties to the proceeding before the board. *Levy v. Board of Zoning App.*, No. M1999-00126-COA-R3-CV, 2001 WL 1141351, at *5 (Tenn. Ct. App. Sept. 27, 2001) (No Tenn. R. App. P. 11 application filed).

Both Tenn. Code Ann. § 13-7-206(b) and Tenn. Code Ann. § 27-9-101 authorize persons who are "aggrieved" to appeal, first to the Board and then to the courts. Extending the authority to appeal and to seek judicial review to all persons who are "aggrieved" reflects an intention to ease the strict application of the customary standing principles. *Federal Election Comm'n v. Akins*, 524 U.S. at 19, 118 S. Ct. at 1783 (holding that "[h]istory associates the word 'aggrieved' with a congressional intent to cast the standing net broadly – beyond the common-law interests and substantive statutory rights upon which 'prudential' standing traditionally rested").

It is desirable that land use matters be resolved on their merits rather than on preclusive, restrictive standing rules. *Northeast Parking, Inc. v. Plumridge*, No. CV 95 04666065, 1995 WL 462407, at *2 (Conn. Super. Ct. July 7, 1995); *Sun-Brite Car Wash, Inc. v. Board of Zoning & App.*, 508 N.E.2d 130, 133 (N.Y. 1987). Thus, both Tenn. Code Ann. § 13-7-206(b) and Tenn. Code Ann. § 27-9-101 should be interpreted broadly rather than narrowly. 8A JULIE ROZADOWSKI & JAMES SOLHEIM, THE LAW OF MUNICIPAL CORPORATIONS § 25.318, at 666 (3d ed., rev. vol. 1994) ("LAW OF MUNICIPAL CORPORATIONS").

Neither Tenn. Code Ann. § 13-7-206(b) nor Tenn. Code Ann. § 27-9-101 expressly limits standing to residents or property owners of the area over which the local zoning board has jurisdiction. The absence of that sort of geographic limitation reflects an understanding that one local government's land use decisions may affect a neighboring local government. In light of the growth of many American cities into their suburbs, "municipal boundary lines are not Chinese walls separating one municipality from the other." *Borough of Roselle Park v. Township of Union*, 272 A.2d 762, 767 (N.J. Super. Ct. Law Div. 1970). Accordingly, many courts have recognized that local governments may have standing to challenge the land use decisions of neighboring local governments as long as the necessary aggrievement exists. *Township of River Vale v. Town of Orangetown*, 403 F.2d 684, 685 (2d Cir. 1968); *City of New Rochelle v. Town of Mamaroneck*, 111 F. Supp. 2d 353, 358-59 (S.D.N.Y. 2000); *Village of Barrington Hills v. Village of Hoffman Estates*, 410 N.E.2d 37, 40 (Ill. 1980); *Symmes Township Bd. of Trustees v. Hamilton County Bd. of Zoning*

---

[4]*McCallen v. City of Memphis*, 786 S.W.2d 633, 639 (Tenn. 1990); *421 Corp. v. Metropolitan Gov't*, 36 S.W.3d 469, 474 (Tenn. Ct. App. 2000); *Hoover, Inc. v. Metropolitan Bd. of Zoning App.*, 955 S.W.2d 52, 54 (Tenn. Ct. App. 1997).

[5]Tenn. Code Ann. § 27-9-101 applies to both statutory and common-law writs of certiorari. *Fairhaven Corp. v. Tennessee Health Facilities Comm'n*, 566 S.W.2d 885, 886 (Tenn. Ct. App. 1976); Ben H. Cantrell, *Review of Administrative Decisions by Writ of Certiorari in Tennessee*, 4 U. Mem. L. Rev. 19, 19 (1973).

*App.*, 674 N.E.2d 1196, 1198 (Ohio Ct. App. 1996); LAW OF MUNICIPAL CORPORATIONS § 25.318.10, at 674.

In land use cases such as this one, the concept of "aggrievement" supplies the distinct and palpable injury needed to have standing. When applied to local governments, aggrievement encompasses interference with a local government's ability to fulfill its statutory obligations, *Symmes Township Bd. of Trustees v. Hamilton County Bd. of Zoning App.*, 674 N.E.2d at 1198, or substantial, direct, and adverse effects on the local government in its corporate capacity. *Village of Barrington Hills v. Village of Hoffman Estates*, 410 N.E.2d at 40. The courts have found aggrievement when the actions of one local government cause (1) reduction in another local government's revenue due to decreased property values,[6] (2) depreciation in the value of another local government's property,[7] (3) interference with another local government's ability to provide police and fire protection,[8] (4) increased safety hazards on roads,[9] (5) interference with another local government's construction of court-ordered improvements to a sewer and water system,[10] (6) interference with another local government's urban development plan,[11] (7) use of property inconsistent with the character of the adjoining area,[12] and (8) general impairment to the health, safety, or welfare of the residents of another local government.[13]

Brentwood asserts in its petition that it has "a substantial legal right, interest and duty to protect the City's Franklin Road corridor program from the encroachment" and that the construction of Lamar Advertising's billboard "will do great damage to the otherwise aesthetically appealing entrance to Brentwood, thereby hurting the image of the City and its attractiveness to future residents, businesses, tourists and other visitors." While Brentwood's allegations regarding aggrievement could have and should have been more explicit,[14] we have determined that they adequately articulate substantial, direct, and adverse effects on Brentwood in its corporate capacity.

---

[6] *Township of River Vale v. Town of Orangetown*, 403 F.2d at 686-87; *Village of Barrington Hills v. Village of Hoffman Estates*, 410 N.E.2d at 39; *Village of Northbrook v. County of Cook*, 466 N.E.2d 1215, 1216-17 (Ill. App. Ct. 1984).

[7] *Township of River Vale v. Town of Orangetown*, 403 F.2d at 685.

[8] *Village of Barrington Hills v. Village of Hoffman Estates*, 410 N.E.2d at 39; *Village of Northbrook v. County of Cook*, 466 N.E.2d at 1217.

[9] *Village of Barrington Hills v. Village of Hoffman Estates*, 410 N.E.2d at 39; *Village of Northbrook v. County of Cook*, 466 N.E.2d at 1216; *Borough of Roselle Park v. Township of Union*, 272 A.2d at 763; *Symmes Township Bd. of Trustees v. Hamilton County Bd. of Zoning App.*, 674 N.E.2d at 1198.

[10] *City of Hickory Hills v. Village of Bridgeview*, 367 N.E.2d 1305, 1307 (Ill. 1977).

[11] *City of New Rochelle v. Town of Mamaroneck*, 111 F. Supp. 2d at 358-59.

[12] *Village of Northbrook v. County of Cook*, 466 N.E.2d at 1216.

[13] *Village of Barrington Hills v. Village of Hoffman Estates*, 410 N.E.2d at 39.

[14] The arguments regarding aggrievement in Brentwood's appellate brief are more explicit than the allegations in its petition.

Lamar Advertising's billboard could be viewed as inconsistent with the use of property in the surrounding area, an interference with Brentwood's Franklin Road corridor program, and an impairment to the welfare of Brentwood residents. Brentwood and its public officials met the requirements of Tenn. Code Ann. §§ 13-7-206(b) & 27-9-101 and Metro Code 17.402.275. Accordingly, they are aggrieved persons both for the purpose of appearing before the Board and seeking judicial review of the Board's decision.

## The Zone of Interests Protected by Nashville's Zoning Ordinance

The only question remaining is whether the interests Brentwood is seeking to protect are within the zone of interests sought to be protected by Nashville's zoning ordinance. Brentwood's petition alleges that the billboard "will do great damage to the otherwise aesthetically appealing entrance to Brentwood, thereby hurting the image of the City and its attractiveness to future residents, businesses, tourists and other visitors." Based on the generous construction of Brentwood's petition required by a Tenn. R. Civ. P. 12.02(6) motion, we have determined that the interests articulated in Brentwood's complaint are within the zone of interests protected by Nashville's zoning ordinance.

Nashville's zoning ordinance defines the purposes of its sign regulations. Metro Code § 17.32.010(C) states that one of these purposes it to

> [o]rganize signs in a manner that reduces visual clutter and integrates signs with all other elements of the site and environs by limiting the size, location and design of signs so that pedestrians and motorists have an equal right to view buildings, structures and natural features in the foreground and background.

"Visual clutter," an oft-used but ill-defined expression, refers to a proliferation of structures, such as signs, that presents a mind-numbing visual assault upon citizens.[15] *Members of City Council of City of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789, 827, 104 S.Ct. 2118, 2140-41 (1984). Minimizing visual clutter is a valid interest for cities, *City of Ladue v. Gilleo*, 512 U.S. 43, 43, 114 S.Ct. 2038, 2039 (1994), because it (1) improves traffic safety, (2) enhances aesthetic appeal,[16] (3) promotes economic well-being, and (4) improves the area's attractiveness to business. *See HHC Med. Group, P.C. v. City of Creve Coeur Bd. of Adjustment*, 99 S.W.3d 68, 71 (Mo. Ct. App. 2003). It is, however, important to distinguish visual clutter, which is limited to the above described proliferation of structures, from aesthetics, which involves purely subjective taste in the design of such structures.

---

[15] According to the National Institute of Mental Health, "[m]ultiple representations of objects in our visual field are constantly competing with each other for our brain's limited visual processing capacity. What's more, they mutually cancel each other out; visual clutter actually suppresses the brain's ability to respond; it reduces its activity." National Institute of Mental Health, *Chairs, Houses and Visual Clutter*, NIH Publication No. 01-4609, *available at* http://www.mental-health-matters.com/articles/article.php?artID=331.

[16] With this objective in mind, at least three states, Maine, Hawaii, and Vermont have taken the more drastic step of eliminating billboards altogether. *Metromedia, Inc. v. City of San Diego*, 453 U.S. 490, 510 n.16, 101 S.Ct. 2882, 2894 n.16 (1981).

Billboards are intended to distract motorists' attention from the road to the content of the advertisement. The visual clutter created by a collection of billboards could present a higher level of distraction and could arguably create a higher risk of traffic accidents. *Metromedia, Inc. v. City of San Diego*, 453 U.S. at 508-09, 101 S.Ct. at 2893 (declining to disagree that billboards are real and substantial hazards to traffic safety or that they cause "aesthetic harm"). Although pure aesthetics may very well not be within the zone of interests protected by Metro Code § 17.32.010(C), Brentwood's concern that Lamar Advertising's billboard will create visual clutter at the intersection of Old Hickory Boulevard and Franklin Road is. Accordingly, the interests Brentwood is seeking to protect in this case are within the zone of interests protected by Metro Code § 17.32.010(C).

## V.
### THE STANDING OF THE INDIVIDUAL LANDOWNERS

The four landowners who joined Brentwood's petition for a common-law writ of certiorari also assert that the trial court erred by concluding that they lacked standing. They take issue with the trial court's conclusion that they did not allege unique, individual aggrievement that was different from aggrievement to the public in general. When visual clutter is the interest sought to be protected, it is unnecessary that the injury be uncommon to the general public. However, these four landowners do not have standing to join Brentwood's petition because they were not parties to the original hearing before the Board of Zoning Appeals. *Levy v. Bd. of Zoning Appeals*, 2001 WL 1141351, at *5.[17] Therefore, we affirm the trial court's dismissal of the four individual property owners, although on different grounds.[18]

## VI.

We reverse the portion of the February 20, 2002 order dismissing the petition for common-law writ of certiorari filed by the City of Brentwood, its city manager, and the members of its Board of Commissioners and remand the case to the trial court for further proceedings consistent with this opinion. We tax the costs of this appeal in equal portions to The Metropolitan Board of Zoning Appeals and Lamar Advertising Company.

_____
WILLIAM C. KOCH, JR., J.

---

[17]Even though these individual landowners may not have standing to join Brentwood's petition, they may petition to intervene in the proceedings as "affected parties" under Tenn. Code Ann. § 27-9-110(b) (2000).

[18]The Court of Appeals may affirm a judgment on different grounds than those relied on by the trial court when the trial court reached the correct result. *Continental Cas. Co. v. Smith*, 720 S.W.2d 48, 50 (Tenn. 1986); *Arnold v. City of Chattanooga*, 19 S.W.3d 779, 789 (Tenn. Ct. App. 1999); *Allen v. National Bank of Newport*, 839 S.W.2d 763, 765 (Tenn. Ct. App. 1992); *Clark v. Metropolitan Gov't*, 827 S.W.2d 312, 317 (Tenn. Ct. App. 1991).