IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
April 21, 2021 Session

**GENE LOVELACE ENTERPRISES, LLC, ET AL. V.
CITY OF KNOXVILLE, ET AL.**

**Appeal from the Circuit Court for Knox County
Nos. 2-391-05, 2-494-05     William T. Ailor, Judge**

_____

**No. E2019-01574-COA-R3-CV**

_____

This is the second appeal of this action concerning the enforceability of a licensing ordinance applicable to sexually oriented businesses in the City of Knoxville. The trial court found the ordinance lawful upon remand from this court and granted summary judgment in favor of the City. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court
Affirmed; Case Remanded**

JOHN W. MCCLARTY, J., delivered the opinion of the court, in which D. MICHAEL SWINEY, C.J. and CARMA DENNIS MCGEE, J., joined.

Matthew A. Grossman, Knoxville, Tennessee, for the appellant, Gene Lovelace Enterprises, LLC and Bambi's, LLC.

Scott D. Bergthold, Bryan A. Dykes, and Robert T. Noland, Chattanooga, Tennessee, for the appellee, the City of Knoxville.

**OPINION**

**I. BACKGROUND**

The City of Knoxville ("the City") drafted the licensing ordinance at issue to regulate the conduct permitted on the premises of sexually oriented businesses by, inter alia, (1) prohibiting total nudity and touching of patrons; (2) prohibiting alcohol on the premises; (3) limiting hours of operation; and (4) requiring sexually oriented businesses

and their employees to obtain licenses. The ordinance was presented to the Metropolitan Planning Committee ("MPC"). Following a hearing over the course of two days on March 10 and April 14, 2005, the MPC denied recommendation of the licensing ordinance.

The ordinance was then presented to the Knoxville City Council ("the City Council"), at which the City's outside counsel, Scott Bergthold, presented evidence, claiming that regulation was necessary because the subject businesses caused adverse secondary effects upon the community, namely diminished property values; increased personal, property, and drug crimes; spread of disease; and neighborhood blight.[1] Attorneys for the businesses at issue were present and objected to the passing of the ordinance with the support of their own documentary evidence. Members of the public were also present and offered their personal opinions on the matter. The ordinance was approved following a full hearing over the course of two days in May 2005.

Gene Lovelace Enterprises, LLC a/k/a Last Chance Theatre & Musical Club 2000 at Alcoa Highway and Bambi's, LLC (collectively "Plaintiffs"), and other adult businesses then filed the instant action to challenge the validity of the ordinance, claiming that (1) the ordinance is invalid because the City did not timely appeal the MPC's denial of the ordinance and that (2) the ordinance violates the constitutional right of free speech because it was enacted based on "shoddy" or misleading information and contains unconstitutionally vague and overbroad terms. The City moved for summary judgment, providing specific evidence of crimes occurring in and around Knoxville near the subject businesses. The City also provided studies performed in other cities showing similar effects of such businesses in other municipalities.

At the discovery stage, Plaintiffs requested permission to depose Attorney Bergthold to gain information concerning the basis for his selection of the materials presented to the City Council. The City moved for a protective order precluding his deposition based upon claims of legislative immunity, the attorney-client privilege, and the work product doctrine. The trial court entered a protective order, citing the immunities and privileges claimed without further explanation.

Plaintiffs responded to the motion for summary judgment with, inter alia, their own affidavit, in which Larry Miller, Ph.D. alleged that the studies provided by the City contained flawed methodology or were otherwise unreliable. Dr. Miller attested that he found no evidence of adverse secondary effects resulting from the operation of the subject businesses. Plaintiffs also provided a report from a cultural anthropologist, who concluded that displays of nudity such as those at issue here have artistic merit and communicative expression, and an article in which the writer concluded that crime was more common around fast food restaurants than around adult businesses.

---

[1] Plaintiffs refer to Attorney Bergthold's evidence as "the legislative predicate."

Following a hearing, the trial court granted summary judgment in the City's favor. Plaintiffs appealed to this court. We reversed the grant of summary judgment and remanded for further proceedings, holding that the trial court failed to fully analyze the requested enactment of the ordinance using the four-factor test developed in *United States v. O'Brien*, 391 U.S. 367 (1968). *Lovelace v. City of Knoxville*, No. E2013-01584-COA-R3-CV, 2014 WL 7069956, at *8 (Tenn. Ct. App. Dec. 15, 2014) ("*Lovelace I*"). The test at issue is as follows:

> 1. whether the ordinance is within the city's constitutional power to enact;
>
> 2. whether the ordinance furthers an important government interest:
>
> 3. whether the government interest is related to suppression of free expression; and
>
> 4. whether the restriction is no greater than is essential to furtherance of the government interest.

*O'Brien*, 391 U.S. at 377 (citations omitted). We directed the trial court as follows:

> Specifically, as regarding the second factor of the *O'Brien* test, the trial court must consider whether Plaintiffs' evidence, consisting of expert affidavits as well as a study and report based on empirical data specific to the City of Knoxville, was successful in casting doubt upon the City's factual findings regarding adverse secondary effects on the community. The trial court must apply the proper burden-shifting framework . . . to determine whether the subject ordinance serves a substantial government interest.

*Lovelace I*, 2014 WL 7069956, at *8. We likewise held that the trial court's ruling concerning the protective order did not allow for meaningful appellate review because it failed to delineate the specific privilege or immunity forming the basis for the order.

Upon remand, Plaintiffs provided an updated report from Dr. Miller in which he again found no adverse secondary effects upon the community from the subject businesses. The trial court renewed the protective order barring the deposition of Attorney Bergthold with the following additional reasoning:

> [Plaintiffs] want to depose [Attorney Bergthold] to show the Court that the data relied upon by the [City] is "shoddy" by using the impressions of [Attorney Bergthold] and his opinions and why he chose the information he chose to present to the City which supported his conclusions. The Court is of the opinion that those things are clearly covered by the attorney-client

- 3 -

privilege as [Attorney Bergthold] was hired by the City to help them develop the ordinance which is a legal function and something that the City Attorney does on a regular basis. To rule otherwise would open up the City Attorney to being deposed every time someone decided to question the efficacy of an ordinance prepared by that office. Questioning [Attorney Bergthold] as to why he chose the information he chose will not test whether the data relied on was based on shoddy work by those who developed it. That would have nothing to do with the data but [Attorney Bergthold's] opinions as to why he chose the data he chose. Any documents that were filed with the ordinance or in support thereof are now public record and have clearly lost any protection of attorney-client privilege and are discoverable. [Plaintiffs have] the right to hire their own expert who can examine those documents and make whatever determination and reach whatever conclusions about or opinions she or he may make. Any statements made by [Attorney Bergthold] in a public forum have also lost any attorney-client privilege but have already been disclosed. However, [Attorney Bergthold's] thoughts, impressions, [and] reasoning as to why he decided to use certain information in making his recommendation is covered by the attorney-client privilege and work product and therefore not discoverable.

In determining whether legislative immunity applies to [Attorney Bergthold], the Court . . . is of the opinion that legislative immunity should be applied to [Attorney Bergthold] as he was hired by [the City] to draft an ordinance which is a legislative function of [the City]. After that determination, the Court must determine the nature of the act he was hired to perform not his motivation. If it was legislative in nature, then legislative immunity should apply and he would be protected. In this case, as stated previously, he was hired to draft a city ordinance. It does not matter that the ordinance was affecting adult entertainment businesses only that he was hired to draft an ordinance which is legislative in nature. As a result, the Court, is of the opinion that he is protected by legislative immunity.

Following a hearing, the court again granted the City's motion for summary judgment, finding that the City was not required to appeal the MPC's denial because the licensing ordinance is not a zoning ordinance. The court found that the ordinance was not overbroad or vague and that it passed the four-factor *O'Brien* test because Plaintiffs failed to cast direct doubt upon the evidence relied upon by the City Council.

## II. ISSUES

A.      Whether the trial court erred in its qualification of the subject ordinance as a non-zoning matter, thereby permitting the City to present the matter to the City Council without filing an appeal from the MPC.

B.      Whether the trial court abused its discretion in its issuance of a protective order barring the deposition of Attorney Bergthold.

C.      Whether the trial court erred in its grant of summary judgment.

## III. STANDARD OF REVIEW

Rule 56.04 of the Tennessee Rules of Civil Procedure states that a motion for summary judgment should only be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  The standard of review following a trial court's decision on a motion for summary judgment is *de novo* with no presumption of correctness.  *Tatham v. Bridgestone Ams. Holding, Inc.*, 473 S.W.3d 734, 748 (Tenn. 2015) (citing *Parker v. Holiday Hospitality Franchising, Inc.*, 446 S.W.3d 341, 346 (Tenn. 2014)).

## IV. ANALYSIS

### A.

Plaintiffs assert that the licensing ordinance at issue is tantamount to a zoning ordinance subject to the zoning appeal process when one ground for denial of a permit is noncompliance with zoning requirements.  Plaintiffs argue that the City's failure to abide by its own appeal process renders the ordinance invalid.  The City responds that the subject ordinance simply requires compliance with laws governing location as a prerequisite to obtaining a business license but does not prevent Plaintiffs from continuing to use the property as a sexually oriented business due to its location.  Rather, it imposes ordinary licensing restrictions on that category of businesses and is not a zoning ordinance.

The City Code provides an appeal process stating that any petitioner "aggrieved by any decision of the [MPC] *may* petition the City Council to consider the same."  Knoxville Municipal Code, Appx. B, Art. VII, Sec. 6F (emphasis added).  The appeal ordinance then provides certain guidelines concerning the public notification requirement and the time limits applicable to such appeals of zoning decisions.

In considering this issue, we must first determine whether the ordinance at issue is a zoning ordinance. Tennessee courts utilize the following two-part test in determining whether an ordinance is a zoning ordinance:

> The first step requires courts to review the terms of the challenged ordinance and the municipality's comprehensive zoning plan to determine whether the ordinance is so closely related to the zoning plan that it can be fairly characterized as tantamount to zoning. The second step requires the courts to determine whether the challenged ordinance substantially affects the use of the property that is the subject of the litigation. Both parts of the test must be satisfied before a challenged ordinance may be held to be tantamount to zoning.

*SNPCO, Inc. v. City of Jefferson City*, 363 S.W.3d 467, 478 (Tenn. 2012). Here, the challenged ordinance regulates the time and manner in which the subject businesses operate and cannot be fairly characterized as tantamount to zoning when the ordinance at issue does not depend upon the City's zoning plan. Consideration of the second factor is unnecessary when both parts of the test must be satisfied to classify the challenged ordinance as a zoning matter. Accordingly, we hold that the City was not beholden to the appeal process for zoning matters under the circumstances presented here.[2]

B.

Plaintiffs next argue that the trial court abused its discretion in entering a protective order, prohibiting the deposition of Attorney Bergthold based upon legislative immunity, the attorney-client privilege, and the work product doctrine. Plaintiffs assert that Attorney Bergthold, who is not a party to the lawsuit, does not have standing to plead legislative immunity because he does not face potential civil or criminal liability. They likewise assert that the City may not rely upon the attorney-client privilege or work product doctrine because they are not seeking his communications with the City. Finally, they suggest that a reasonable protective order may shield the City from any disclosure of unnecessary material while also allowing their requested discovery. The City responds that Plaintiffs possess the documents filed with the ordinance or those filed in support thereof and that Attorney Bergthold's thought processes are protected and not subject to review.

---

[2] Plaintiffs suggest that review was somehow hampered by the failure to follow the appeal process, citing the fact that the appeal procedure requires notification to all interested parties and the general public at least 15 days prior to the hearing. Our review of the record reflects that Plaintiffs were afforded a full and fair hearing before both the MPC and the City Council and that members of the public were present at the City Council hearing and offered an opportunity to present their opinions.

Decisions pertaining to discovery and the issuance of a protective order are subject to an abuse of discretion standard of review. To determine whether a decision constitutes an abuse of discretion, we review the trial court's decision to ascertain: "(1) whether the factual basis of the decision is supported by sufficient evidence; (2) whether the trial court has correctly identified and properly applied the applicable legal principles; and (3) whether the trial court's decision is within the range of acceptable alternatives." *Gooding v. Gooding*, 477 S.W.3d 774, 780 (Tenn. Ct. App. 2015) (quotation omitted). The Tennessee Rules of Civil Procedure limit the scope of discovery to "any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party[.]" Tenn. R. Civ. P. 26.02. Our Supreme Court has provided the following additional guidance in such matters:

> When a discovery dispute involves the application of a privilege, the court's judgment should be guided by the following three principles. First, Tennessee's discovery rules favor discovery of all relevant, non-privileged information. Second, even though privileges do not facilitate the fact-finding process, they are designed to protect interests and relationships that are regarded as sufficiently important to justify limitations on discovery. Third, while statutory privileges should be fairly construed according to their plain meaning, they need not be broadly construed.

*Powell v. Cmty. Health Sys., Inc.*, 312 S.W.3d 496, 504 (Tenn. 2010) (citation omitted).

The attorney-client privilege, codified now at Tennessee Code Annotated section 23-3-105, provides as follows:

> No attorney, solicitor or counselor shall be permitted, in giving testimony against a client or person who consulted the attorney, solicitor or counselor professionally, to disclose any communication made to the attorney, solicitor or counselor as such by such person during the pendency of the suit, before or afterward, to the person's injury.

Similarly, the work product doctrine, codified now at Rule 26.02(3) of the Tennessee Rules of Civil Procedure, provides as follows:

> [A] party may obtain discovery of documents and tangible things otherwise discoverable under subdivision (1) of this rule and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including an attorney, consultant, surety, indemnitor, insurer, or agent) only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the case and is unable without undue hardship to obtain the substantial equivalent of the materials

- 7 -

by other means. In ordering discovery of such materials when the required showing has been made, *the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation.*

(Emphasis added.). We agree with the trial court that Attorney Bergthold's thoughts, impressions, and reasoning as to why he decided to use certain information in making his recommendation are covered by the attorney-client privilege and are his work product, thereby precluding their discoverability.

Legislative immunity, codified now at Article II, Section 13 of the Tennessee Constitution, provides as follows:

> Senators and representatives shall, in all cases, except treason, felony, or breach of the peace, be privileged from arrest during the session of the General Assembly, and in going to and returning from the same; and for any speech or debate in either House, they shall not be questioned in any other place.

Legislators or attorneys hired by legislators are not specifically covered by the doctrine of legislative immunity as codified; however, the immunity has been applied in a broad manner to insulate local legislators from judicial interference with their duties. *Miller v. Wyatt*, 457 S.W. 3d 405, 411-12 (Tenn. Ct. App. 2014) (holding that a city council member was immune from suit for statements made during the course of a city council hearing). We decline to extend the scope of such immunity to the circumstances presented here when the attorney-client privilege and work product doctrine are more applicable to the issue presented, namely whether Attorney Bergthold may be deposed concerning his thought process and reasoning for presenting certain documentation in support of the licensing ordinance. We affirm the trial court's issuance of the protective order with all of the above considerations in mind. This court "may affirm a judgment on different grounds than those relied on by the trial court when the trial court reached the correct result." *City of Brentwood v. Metro. Bd. of Zoning Appeals*, 149 S.W.3d 49, 60 n.18 (Tenn. Ct. App. 2004).

C.

Plaintiffs ask this court to reverse the grant of summary judgment. Plaintiffs first claim that the ordinance is facially overbroad and vague, specifically in reference to its definitions of sexually oriented business, specified anatomical areas, and employee. The City asserts that the ordinance is clearly defined, narrowly tailored, and is not substantially broader than necessary to promote the governmental interest in combating negative secondary effects.

A panel of this court has previously stated that "[a]n ordinance is unconstitutionally vague when a person of common intelligence must necessarily guess at its meaning. To avoid unconstitutional vagueness, a statute must define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *Am. Show Bar Series, Inc. v. Sullivan Cnty.*, 30 S.W.3d 324, 339 (Tenn. Ct. App. 2000) (internal citations and quotations omitted). "A statute is overbroad when it poses a realistic danger that the statute itself will significantly compromise recognized First Amendment protections of parties not before the Court." *Id.* (internal quotation omitted). However, the ordinance may be upheld if the definition at issue is "readily susceptible to a narrowing construction that would salvage its constitutionality." *Id.* (citations omitted).

The definitions of the relevant terms at issue are as follows:

1. Sexually oriented business: "adult bookstore," an "adult video store," an "adult cabaret," an "adult motel," an "adult motion picture theater," a "semi-nude model studio," "sexual device shop," or "sexual encounter center."

2. Specified anatomical areas: (1) Less than completely and opaquely covered: human genitals or anus; pubic region; buttock; and female breast below a point immediately above the top of the areola; and (2) Human male genitals in a discernibly turgid state, even if completely and opaquely covered.

3. Employee: any person who performs any service on the premises of a sexually oriented business, on a full time, part time, or contract basis, whether or not the person is denominated an employee, independent contractor, agent, or otherwise. "Employee" does not include a person exclusively on the premises for repair or maintenance of the premises or for the delivery of goods to the premises.

The terms "adult cabaret" and "employee" are more clearly defined by the narrowing construction in the Adult-Oriented Registration Act as follows:

(2) "Adult cabaret" means an establishment that features as a principal use of its business, entertainers, waiters, or bartenders who expose to public view of the patrons within such establishment, at any time, the bare female breast below a point immediately above the top of the areola, human genitals, pubic region, or buttocks, even if partially covered by opaque material or completely covered by translucent material, including swim suits, lingerie, or latex covering. "Adult cabaret" includes a commercial establishment that features entertainment of an erotic nature, including exotic dancers, strippers,

- 9 -

male or female impersonators, or similar entertainers[.]

* * *

(9)(B) "Employee" does not include a person exclusively on the premises for repair or maintenance of the premises or equipment on the premises, or for the delivery of goods to the premises, nor does it include an independent accountant, attorney, or other similar professional incidentally visiting the premises solely to perform accounting, legal or other similar professional services; provided, that the accountant, attorney or other similar professional is not a manager, owner, operator, entertainer, or escort connected with the adult-oriented establishment or the providing of adult entertainment[.]

Tenn. Code Ann. § 7-51-1102(2), (9). Further, the preamble to the licensing ordinance itself provides as follows:

[I]t is not the intent of this ordinance to suppress any speech activities protected by the United States Constitution or the Tennessee Constitution, but to enact a narrowly tailored ordinance to further the content-neutral governmental interests of the City, to wit, the controlling of secondary effects of sexually oriented businesses.

Plaintiffs suggest that the definitions leave no exception for communication that includes genuine artistic, political, or scientific merit and that the definition of employee does not include any exception for those performing unrelated services on the premises. We disagree. We, like the trial court, do not find that the definitions pose a real and substantial danger to significantly compromise constitutionally protected speech and that the words are clearly and narrowly tailored to target the performances at sexually oriented business that cause negative secondary effects. The terms adult cabaret and employee are subject to a narrowing construction that more clearly defines those subject to the ordinance. We affirm the trial court's finding on this issue.

Plaintiffs next claim that the ordinance is subject to strict scrutiny, not the intermediate scrutiny utilized by the trial court in analyzing the ordinance. Here, the ordinance is not specifically targeted at the content of the speech, e.g. the erotic message conveyed by the entertainment, but is instead targeted at combating the negative secondary effects of the protected expression and is more closely aligned to a time, place, and manner restriction, thereby requiring intermediate scrutiny of the subject ordinance. *Am. Show Bar Series, Inc.*, 30 S.W.3d at 333-34.

Plaintiffs next reassert their original claim in *Lovelace I* that the trial court's grant of summary judgment to the City was improper under the test set forth in *O'Brien*. As previously stated, the four-factor test is as follows:

1.     whether the ordinance is within the city's constitutional power to enact;

2.     whether the ordinance furthers an important government interest:

3.     whether the government interest is related to suppression of free expression; and

4.     whether the restriction is no greater than is essential to furtherance of the government interest.

*O'Brien*, 391 U.S. at 377 (citations omitted).  The licensing ordinance is clearly within the City's constitutional powers to protect the public health, safety, and welfare.[3]  The third and fourth factors are also easily satisfied as we have already found that the ordinance is content neutral, not overly broad, and narrowly tailored to combat the secondary effects of such businesses.  However, upon remand, the trial court was specifically tasked with determining whether Plaintiffs' evidence, consisting of expert affidavits as well as a study and report based on empirical data specific to the City of Knoxville, was successful in casting doubt upon the City's factual findings regarding adverse secondary effects on the community in accordance with the second factor.

The evidentiary standards applicable to analyzing this issue are as follows:

[A] municipality may rely on any evidence that is "reasonably believed to be relevant" for demonstrating a connection between speech and a substantial, independent government interest.  This is not to say that a municipality can get away with shoddy data or reasoning.  The municipality's evidence must fairly support its rationale for its ordinance.  If plaintiffs fail to cast direct doubt on this rationale, either by demonstrating that the municipality's evidence does not support its rationale or by furnishing evidence that disputes the municipality's factual findings, the municipality meets the [*City of Renton v. Playtime Theaters, Inc.*, 475 U.S. 41 (1986)] standard.  If plaintiffs succeed in casting doubt on a municipality's rationale in either manner, the burden shifts back to the municipality to supplement the record with evidence renewing support for a theory that justifies its ordinance.

*City of Los Angeles v. Alameda Books, Inc.*, 535 U.S. 425, 438-39 (2002) (citations omitted).  The trial court offered the following reasoning in support of its finding of the fulfillment of the second factor:

---

[3] Plaintiffs do not appear to dispute this fact.

The plaintiffs contend that the City failed to show that the ordinance furthers an important governmental interest in combating negative secondary effects because: (1) the City enacted the Ordinance based upon shoddy reasoning and data; and (2) [Plaintiffs] succeeded in casting direct doubt on the City's findings by furnishing contrary evidence. Most notable among [Plaintiffs'] evidence are affidavits of two experts, Dr. Larry S. Miller and Dr. Randy D. Fisher. Specifically, Dr. Miller contended that he did not find any adverse secondary effects caused by the sexually oriented businesses in Knoxville, explaining that: (1) the sexually oriented business establishments in Knoxville are not "hot spots" of criminal activity, and there were few police calls for service and crimes being reported at or near these establishments; (2) what has the most effect on surrounding property value is zoning, signage and structural design and maintenance, as opposed to sexually oriented businesses; and (3) there is no epidemiological evidence to suggest that Sexually Transmitted Diseases (STDs) are traceable to sexually oriented businesses in Knoxville. Further, Dr. Fisher challenged the methodologies used in the reports and studies in other localities, which were relied upon by the City in enacting the Ordinance.

The Court finds that [Plaintiffs] failed to cast direct doubt on the City's findings. The City provided sufficient evidence that is "reasonably believed to be relevant" to demonstrate the City's interest in combating and preventing the negative secondary effects of sexually oriented businesses. Specifically, the City relied upon extensive legislative findings, including court opinions, reports and studies from other cities, periodical articles, and police reports from other localities, which contain evidence of secondary effects caused by sexually oriented businesses. Although not required, the City also provided the Knoxville Police Department's reports of crimes at sexually oriented businesses in Knoxville.

While the City may reasonably rely on evidence from other localities and anecdotal evidence, plaintiffs' burden [to cast doubt upon the City's findings] is heavier and cannot be met with unsound inference or similarly anecdotal information. [Plaintiffs] finding is that there is insufficient evidence to prove that sexually oriented businesses have actually been causing high crime rates, reduced property values, and transmission of STDs in Knoxville. [Plaintiffs'] evidence suggests, at best, that: (1) it is unclear whether and, to what extent, sexually oriented businesses cause negative secondary effects in Knoxville; and that (2) the City could have reached a different conclusion. This does not render the City's contrary findings and its rationale "shoddy." The second prong of the O'Brien test is satisfied, as the City showed that the Ordinance furthers an important governmental interest, and [Plaintiffs] failed to cast direct doubt on the City's rationale.

(internal citations omitted). We agree with the trial court's reasoning on this issue. *See Richland Bookmart, Inc. v. Knox Cnty., Tenn.*, 555 F.3d 512, 527 (6th Cir. 2009) ("[E]vidence suggesting that a different conclusion is also reasonable does not prove that the County's findings were impermissible or its rationale unsustainable.") (citation omitted). We likewise conclude that the City established that the ordinance furthers an important governmental interest and that Plaintiffs failed to cast direct doubt on the City's rationale. Having found that the second factor has been fulfilled, we affirm the trial court's grant of summary judgment in favor of the City.

## V. CONCLUSION

For the reasons stated, we affirm the decision of the trial court and remand for such further proceedings as may be necessary. Costs on appeal are assessed equally to the appellants, Gene Lovelace Enterprises, LLC and Bambi's, LLC.

_____
JOHN W. MCCLARTY, JUDGE