# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
### October 26, 2011 Session

## ABBINGTON CENTER, LLC v. TOWN OF COLLIERVILLE

**Direct Appeal from the Chancery Court for Shelby County**
**Nos. CH-09-0024–II and CH-10-1782-III      Arnold Goldin, Chancellor**

---

**No. W2011-00722-COA-R3-CV - Filed February 13, 2012**

---

The two billboards at issue in the case were erected in 1979, prior to Collierville's prohibition of billboards. Plaintiff sought to re-construct the billboards, and he received assurances from the Town that he could do so. However, the Town subsequently questioned whether the billboards were legal, non-conforming uses protected by the "grandfather clause" set forth in Tennessee Code Annotated section 13-7-208, and it issued stop work orders on the billboards' reconstruction and it refused to issue the building permits necessary for reconstruction. Plaintiff appealed to the Board of Zoning Appeals, which affirmed the Town's actions. Plaintiff then filed a writ of certiorari in the chancery court, which, prior to trial, remanded to the BZA. On remand, the BZA affirmed its prior decision, and Plaintiff subsequently filed a second writ of certiorari in the chancery court. The chancery court found that the BZA acted illegally, arbitrarily, and capriciously, and it invalidated the stop work orders and it declared that Plaintiff could re-construct the billboards. Based on Plaintiff's failure to demonstrate that the billboards were legal uses prior to the 1982 amendment, we find that the BZA was justified in upholding the Town's stop work orders and in upholding the Town's denial of Plaintiff's requested building permits. Accordingly, we find that the BZA's decisions were not illegal, arbitrary, or capricious.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Chancery Court Reversed**

ALAN E. HIGHERS, P.J., W.S., delivered the opinion of the Court, in which DAVID R. FARMER, J., and J. STEVEN STAFFORD, J., joined.

Michael L. Mansfield, Jackson, Tennessee, for the appellant, Town of Collierville.

David Wade, J. Lewis Wardlaw, Memphis, Tennessee, for the appellee, Abbington Center, LLC.

## OPINION

### I. FACTS & PROCEDURAL HISTORY

This case involves the last two remaining billboards in Collierville–561 Poplar Avenue and 350 Highway 72 West–constructed on or about December 15, 1979. At the time of their construction, both state and municipal permits were required. Specifically, Collierville's (the "Town") Code of Ordinances required that a building permit be issued prior to the construction of any billboard and that a sign permit fee be paid. On June 24, 1982, however, the Town amended its Code of Ordinances to prohibit the erection of new billboards.

In 1993, Abbington Center, LLC ("Plaintiff"), through its owner and manager, Stanley H. Trezevant, III, purchased the two billboards at issue, and it began seeking advice as to whether the billboards had been "grandfathered in" such that they could be torn down and reconstructed. Plaintiff received assurances from the Town that reconstruction was appropriate, but Plaintiff subsequently discovered that the billboards were leased for the next fourteen years, and therefore, it did not attempt to tear them down.

In 2007, after the lease expiration, Plaintiff renewed its efforts to reconstruct the billboards. Plaintiff submitted its proposed designs for the new billboards to the Town's Design Review Commission. The Design Review Commission, in letters dated October 30, 2007, notified Plaintiff that his "request to replace the existing billboard structure[s] . . . has received administrative approval by the Design Review Commission[,] . . . . [and] that a permit may be issued for th[ese] billboard[s.]" The approval, however, was conditioned upon Plaintiffs' receipt of building and electrical permits for the structures.[1]

Based upon the Design Review Commission's conditional approval, Plaintiff began the process of removing and replacing the billboards. However, due to Plaintiff's failure to apply for the necessary permits, the Town posted "Stop Work" orders at both billboard sites. Plaintiff subsequently submitted its applications for the necessary permits, but the Town declined to issue the requested permits, claiming that Plaintiff had failed to demonstrate that the billboards constituted legal, nonconforming uses which qualified for protection under Tennessee's grandfather statute, Tennessee Code Annotated section 13-7-208. Specifically, the Town focused on the lack of proof that the requisite building permits were secured when the billboards were initially constructed.

---

[1]The letters also set forth a third condition of approval: "Any deviations from the approved plans shall be reviewed by staff and/or the Design Review Commission prior to the work being undertaken."

Plaintiff appealed the Town's decision to the Board of Zoning Appeals ("BZA") and a hearing was held on November 13, 2008. Regarding initial legality, Mr. Trezevant cited the Town's assurances that re-construction was permissible and he stated that he was "99.999 percent certain[]" that he could produce the original building permits, but that he had not done so because "no one ha[d] ever asked him to bring proof that these signs are legal." In the absence of actual evidence of initial legality, the BZA affirmed the Town's issuance of the stop work orders and its denial of Plaintiff's request for building permits.

Plaintiff then filed a petition for writ of certiorari in the chancery court on January 8, 2009, but before trial commenced, the trial court remanded to the BZA for further consideration.[2] Following the submission of additional evidence,[3] a second hearing was held before the BZA on September 9, 2010. The BZA considered "[w]hether the subject billboard signs were legal non-conforming signs at the time the 1982 Collierville sign ordinance was adopted." The BZA, in a 2-1 decision, determined that the signs were not legal, and therefore, it upheld its prior decision.

Plaintiff then filed a second petition for writ of certiorari on September 30, 2010. A consent order consolidating the two petitions was entered, and the case was tried before the chancery court on February 16, 2011. In a February 28, 2011 order, the chancery court made the following findings:

1.      As a matter of law, the evidence in the Record is somewhat overwhelming that the subject billboard signs . . . were legal uses prior to the adoption of the 1982 Town of Collierville Sign Ordinance and are protected by Tenn. Code Ann. § 13-7-208, *et seq.* In contrast, there is no evidence in the Record to indicate that the signs were not legal uses prior to the adoption of the 1982 Town of Collierville Sign Ordinance.

2.      Tenn. Code Ann. § 13-7-208, *et. seq.* talks about use. Abbington Center, LLC's burden before the Town of Collierville Board of Zoning Appeals was to prove by a preponderance of the evidence that the subject signs were legal uses prior to the adoption of the 1982 Town of Collierville Sign Ordinance.

---

[2]The remand order stated that the "sole issue to be considered by the BZA on remand is whether or not the subject billboard signs were legal non-conforming signs at the time the 1982 Collierville Sign Ordinance was adopted."

[3]The Town objected to the submission of certain evidence to the BZA. However, the chancery court, in its remand order, stated that "[Mr.] Trezevant can present to the BZA whatever evidence [he] wants to put on."

3. The Court finds nothing in the Record that reflects any requirement or any concern by the Town of Collierville Board of Zoning Appeals other than the fact that Abbington Center, LLC could not produce the original thirty year old municipal building permits.

4. Considering the circumstances and the cases reviewed by the Court, there is no basis to require the production of such municipal building permits.

5. The Court bases its finding that the subject signs were legal uses not on the mere fact that the billboards remained standing for a long period of time, but based on the totality of the evidence, including the existence of the required State of Tennessee sign permits issued at the time of the signs' construction and prior to the adoption of the 1982 Town of Collierville Sign Ordinance, and the Town of Collierville's own documents reflecting time and time again over a period of years the Town of Collierville's overwhelming opinion that the signs were legal uses prior to the adoption of the 1982 Town of Collierville Sign Ordinance.

7. The November 13, 2008 and September 9, 2010 decisions of the Town of Collierville Board of Zoning Appeals to refuse to lift the challenged Stop Work Orders placed on the subject signs were illegal, arbitrary and capricious.

Thus, the chancery court invalidated the stop work orders and it declared that "Abbington Center, LLC is allowed to reconstruct the billboard signs . . . in accordance with the controlling Tennessee Statute – Tenn. Code Ann. § 13-7-208, *et seq*." The Town timely appealed.

## II. ISSUE PRESENTED

On appeal, the Town asks this Court to determine whether the chancery court erred in finding that the Board of Zoning Appeals acted illegally, arbitrarily and capriciously in upholding the Town's issuance of stop work orders and denial of building permits. For the following reasons, we reverse the decision of the chancery court, and we reinstate the decisions of the Board of Zoning Appeals.

-4-

### III. STANDARD OF REVIEW

The Town of Collierville Code of Ordinances vests the Board of Zoning Appeals with the power to "[h]ear and decide appeals from any order, requirement, decision or determination made by any Town official charged with the responsibility of enforcing the provisions of [the zoning regulations], whereby it is alleged in writing that such official is in error or has acted in an arbitrary manner." **Title IX, § 151.182**. Tennessee Code Annotated section 27-8-101, which Plaintiff utilized to challenge the BZA decision in the chancery court, "provides for judicial review of a decision by any local board or commission by the filing of a petition for common law writ of certiorari." *Young v. City of LaFollette*, No. E2010-00653-COA-R3-CV, 2011 WL 1938516, at *3 (Tenn. Ct. App. May 20, 2011) *perm. app. denied* (Tenn. Sept. 21, 2011) (quoting *Shute v. Metro. Gov't of Nashville, Davidson Co.*, No. M2009-01417-COA-R3-CV, 2010 WL 3064362, at *3-4 (Tenn. Ct. App. Aug. 5, 2010) *perm. app. denied* (Tenn. Dec. 7, 2010))

"The primary consequence of a determination that a party must seek judicial review through the common law writ of certiorari procedure is that the trial court must apply a limited standard of review to decisions already made by administrative officials, rather than address the issue *de novo* as the initial decision maker." *State ex rel. Moore & Assocs., Inc. v. West*, 246 S.W.3d 569, 574 (Tenn Ct. App. 2005); *see also id.* ("'Judicial review of administrative decisions . . . is limited in scope. The . . . extent of a judicial review . . . is narrow. As a general rule [local government bodies are] clothed with broad discretionary powers[.]'") (quoting 82 Am.Jur.2d, *Zoning and Planning*, § 334 at 906). These decisions, whether legislative or administrative, "are presumed to be valid and a heavy burden of proof rests upon the shoulders of the party who challenges the action." *McCallen v. City of Memphis*, 786 S.W.2d 633, 638 (Tenn. 1990).

"Under the limited standard of review in common law of writ of certiorari proceedings, courts review a lower tribunal's decision only to determine whether that decision maker exceeded its jurisdiction, followed an unlawful procedure, acted illegally, arbitrarily, or fraudulently, or acted without material evidence to support its decision." *Id.* (quoting *McCallen*, 786 S.W.2d at 638). "In proceedings involving a common law writ of certiorari, illegal, arbitrary, or fraudulent actions include: 1) the failure to follow minimum standards of due process; 2) the misrepresentation or misapplication of a legal standard; 3) basing a decision on ulterior motives; and 4) violating applicable constitutional standards." *Harding Academy v. Metro. Gov't of Nashville and Davidson Co.*, 222 S.W.3d 350, 363 (Tenn. 2007) (citing *Hoover, Inc v. Metro. Bd. of Zoning Appeals*, 924 S.W.2d 900, 905 (Tenn. Ct. App. 1996)).

Under the certiorari standard, courts may not (1) inquire into the intrinsic correctness of the lower tribunal's decision, *Arnold v. Tennessee Bd. of Paroles,* 956 S.W.2d 478, 480 (Tenn. 1997); *Powell v. Parole Eligibility Rev. Bd.,* 879 S.W.2d 871, 873 (Tenn. Ct. App. 1994); (2) reweigh the evidence, *Watts v. Civil Serv. Bd. for Colum.,* 606 S.W.2d 274, 277 (Tenn. 1980); *Hoover, Inc. v. Metro Bd. of Zoning App.,* 924 S.W.2d 900, 904 (Tenn. Ct. App. 1996); or (3) substitute their judgment for that of the lower tribunal. *421 Corp. v. Metropolitan Gov't of Nashville,* 36 S.W.3d 469, 474 (Tenn. Ct. App. 2000). It bears repeating that [the] common law writ of certiorari is simply not a vehicle which allows the courts to consider the intrinsic correctness of the conclusions of the administrative decision maker. *Powell,* 879 S.W.2d at 873; *Yokley v. State,* 632 S.W.2d 123, 126 (Tenn. Ct. App. 1981).

*Moore*, 246 S.W.3d at 574. "If 'any possible reason' exists justifying the action, it will be upheld." ***McCallen***, 786 S.W.2d at 641. "This limited standard of review applies to both the trial court and to this Court." ***Lamar Tenn., LLC v. Murfreesboro Bd. of Zoning Appeals***, 336 S.W.3d 226, 232 (Tenn. Ct. App. 2010) (citing *Wright v. Tenn. Peace Officer Standards & Training Comm'n*, 277 S.W.3d 1, 8 (Tenn. Ct. App. 2008)).

## IV.   DISCUSSION

As stated above, when the billboards at issue were constructed in 1979, the Town's Code of Ordinances required that a building permit be issued prior to the construction of any billboard and that a sign permit fee be paid. Subsequently, in 1982, however, the Town amended its Code of Ordinances to prohibit the erection of new billboards altogether. When, in 2007, Plaintiff sought permits to re-construct the billboards, the Town denied its request based upon Plaintiff's alleged failure to demonstrate that the billboards were pre-existing nonconforming uses which were entitled to the protection of Tennessee Code Annotated section 13-7-208, which addresses nonconforming uses. Specifically, the Town claimed that Plaintiff had not shown that the requisite municipal permits had been obtained in 1979, such that the billboards were legally in existence when the Code of Ordinances was amended in 1982.

Tennessee Code Annotated section 13-7-208 provides in relevant part:

(b)(1) In the event that a zoning change occurs in any land area where such

land area was not previously covered by any zoning restrictions of any governmental agency of this state or its political subdivisions, or where such land area is covered by zoning restrictions of a governmental agency of this state or its political subdivisions, and such zoning restrictions differ from zoning restrictions imposed after the zoning change, then any industrial, commercial or business establishment in operation, permitted to operate under zoning regulations or exceptions thereto prior to the zoning change shall be allowed to continue in operation and be permitted; provided, that no change in the use of the land is undertaken by such industry or business.

. . . .

(d)(1) Industrial, commercial, or other business establishments in operation and permitted to operate under zoning regulations or exceptions thereto immediately preceding a change in zoning shall be allowed to destroy present facilities and reconstruct new facilities necessary to the conduct of such industry or business subsequent to the zoning change; provided, that no destruction and rebuilding shall occur which shall act to change the use classification of the land as classified under any zoning regulations or exceptions thereto in effect immediately prior to or subsequent to a change in the zoning of the land area on which such industry or business is located. No building permit or like permission for demolition, construction or landscaping shall be denied to an industry or business seeking to destroy and reconstruct facilities necessary to the continued conduct of the activities of that industry or business, where such conduct was permitted prior to a change in zoning; provided, that there is a reasonable amount of space for such expansion on the property owned by such industry or business situated within the area which is affected by the change in zoning, so as to avoid nuisances to adjoining landowners.

**Tenn. Code Ann. § 17-3-208**. The statute is essentially a "grandfather clause," meaning "[a] statutory or regulatory clause that exempts a class of persons or transactions because of circumstances existing before the new rule or regulation takes effect.'" ***Custom Land Dev., Inc. v. Town of Coopertown***, 168 S.W.3d 764, 772 n.4 (Tenn. Ct. App. 2004) (quoting *Black's Law Dictionary* 706 (7th ed. 1999)). The statute "protects property owners from the effect of a change in zoning requirements which would otherwise render their use of real property a non-conforming use. It permits pre-existing non-conforming uses to exist and expand despite later-enacted municipal ordinances." ***Coe v. City of Sevierville***, 21 S.W.3d 237, 239 (Tenn. Ct. App. 2000). The statute, though, must be strictly construed against the

party seeking to come within the grandfather clause exception. ***Outdoor West of Tenn., Inc. v. City of Johnson City***, 39 S.W.3d 131, 135 (Tenn. Ct. App. 2000) (citing *Teague v. Campbell County*, 920 S.W.2d 219, 221 (Tenn. Ct. App. 1995)).

A plaintiff seeking to invoke the protection of Tennessee Code Annotated section 13-7-208 must make two threshold showings: "(1) There has been a change in zoning (either adoption of zoning where none existed previously, or an alteration in zoning restrictions), and (2) the use to which they put their land was permitted prior to the zoning change." ***Lamar***, 905 S.W.2d at 176 (citing *Rives v. City of Clarksville*, 618 S.W.2d 502 (Tenn. Ct. App. 1981)). "It is implicit in the law that the 'grandfathering clause' of any statute, resolution or ordinance contemplates a lawful activity being conducted which becomes a non-conforming use after passage of a statute, resolution or ordinance." ***Coe***, 21 S.W.3d at 243 (citing *Chadwell v. Knox County*, 980 S.W.2d 378, 381 (Tenn. Ct. App. 1998)). "It would be 'a strained and illogical construction' to say the Legislature intended to grandfather a use which would put Plaintiff in a better position than she was in before the zoning became effective." ***Id.*** (quoting *Teague*, 920 S.W.2d at 221).

The parties to this appeal do not dispute that a change in zoning has occurred. Instead, they disagree as to whether Plaintiff demonstrated that "the use to which [it] put [its] land was permitted prior to the zoning change." ***See Lamar***, 905 S.W.2d at 176 (citations omitted). Again, the BZA upheld the Town's stop work order and its denial of Plaintiff's re-construction permit, determining that the billboards were not legal non-conforming uses at the time the 1982 amendment was adopted. However, the chancery court found that the BZA had improperly insisted upon the production of "thirty year old municipal building permits" to demonstrate the billboard's legality prior to the zoning amendment. Despite the lack of original municipal building permits, the chancery court found "somewhat overwhelming evidence that the subject billboard signs . . . were legal uses prior to the adoption of the 1982 Town of Collierville Sign Ordinance[.]" Thus, it concluded that the BZA's decisions were "illegal, arbitrary, and capricious."

On appeal, the Town contends that the BZA's decisions were not based solely on Plaintiff's failure to produce the original municipal building permits, as Plaintiff suggests, but that they were based upon Plaintiff's failure to present *any* credible evidence that such permits had actually been obtained to demonstrate that the billboards constituted legal, nonconforming uses protected from operation of the 1982 amendment. The Town argues that the chancery court, in overturning the BZA decision, exceeded the proper scope of review by erroneously reweighing the evidence, and that it improperly shifted the burden of proof to the Town.

Judicial review under a common-law writ of certiorari is typically limited to the record made before the administrative body.[4] *See 421 Corp. v. Metro. Gov't of Nashville and Davidson Co.*, 36 S.W.3d 469, 474 (Tenn. Ct. App. 2000) (citing *McCallen*, 786 S.W.2d at 639). Thus, to determine whether the BZA acted illegally, arbitrarily, or capriciously, we look to the record made before it.

At the second BZA hearing, Plaintiff submitted considerable evidence regarding the billboards' alleged legality at the time of the 1982 amendment. As stated above, prior to the commencement of re-building the structures, Plaintiff sought assurances from the Town that such actions were appropriate, and three letters expressing such "assurances" were presented to the BZA. First, Plaintiff submitted an August 26, 1993 letter from the Town's outside legal counsel, Joel Porter, to the Town's Director of Development Services, B. J. Watson:

> I have researched the issue as to whether a billboard which was in existence when the sign ordinance was passed can continue as a non-conforming use.
>
> . . . .
>
> Therefore, it is my opinion that any billboard which was in existence at the time of the passage of the sign ordinance and which has not been expanded or increased can continue in operation.

Plaintiff also submitted Mr. Watson's subsequent letter to Mr. Trezevant of August 31, 1993:

> In response to the question surrounding the billboard located on your property recently purchased on Poplar Avenue in Collierville, I offer the following confirmation as abstracted from the Town's attorney, Joel Porter's, research as to whether a billboard which was in existence when the sign ordinance was passed can continue as a non-conforming use.
>
> The billboard located on this property may remain as long as it is not expanded (i.e. enlarged, raised in height). Renovation of the sign is an appropriate activity for you to proceed with.

---

[4]The court may permit "the introduction of additional evidence on the issue of whether the board or agency exceeded its jurisdiction or acted illegally, capriciously, or arbitrarily." *421 Corp. v. Metro. Gov't of Nashville and Davidson Co.* 36 S.W.3d 469, 474 (Tenn. Ct. App. 2000) (citing *Cooper v. Williamson Co. Bd. of Educ.*, 746 S.W.2d 176, 179 (Tenn. 1987); *Davison v. Carr*, 659 S.W.2d 361, 363 (Tenn. 1983)). No additional evidence has been presented in this case.

Finally, Plaintiff presented an October 30, 2007 letter[5] from Town Planner James Kuzdas, Jr. conditionally approving Plaintiff's re-construction design:

> The request to replace the existing billboard structure[s] currently located at 561 Poplar Avenue [and 350 Highway 72 West] ha[ve] received administrative approval by the Design Review Commission. Staff ha[ve] consulted with legal staff and determined that a permit may be issued for the[se] billboard[s], as there is no increase in size or intensification of the nonconforming status of the existing billboard. . . . Conditions of approval follow:
>
> 1. Any deviations from the approved plans shall be reviewed by staff and/or the Design Review Commission prior to the work being undertaken.
>
> 2. The applicant shall be required to obtain a building permit for the sign structure from the Town of Collierville codes division prior to the work being undertaken.
>
> 3. The applicant shall be required to obtain an electrical permit for the sign structure from the Town of Collierville codes division prior to the work being undertaken.

Plaintiff also submitted evidence which it claims demonstrated "[t]he unchallenged existence of the signs for more than thirty years[.]" Specifically, Plaintiff introduced two internal Town documents, prepared by Town Codes Compliance Officer Bill Hylander, produced during discovery:[6] 1) "Notes on Billboards," and 2) "Specific Billboard Signs." The "Notes on Billboards" document listed Plaintiff's billboards under the heading "Billboards in existence within the Town limits prior to June 24, 1982 (effective date of Sign Ordinance) Non-conforming since 6/24/82[.]"[7] The "Specific Billboard Signs" document

---

[5]Plaintiff actually submitted two letters, but the language of both is identical with the exception of the billboard location.

[6]According to the Town, the "Bill Hylander documents" were prepared with regard to the amortization schedule providing for the termination and removal of non-conforming signs over a five-year period set forth in the 1982 ordinance. However, the schedule was later held to be a violation of the grandfather statute, and therefore, unconstitutional.

[7]The document lists the billboards' addresses as "547 West Poplar" and "east side of Highway 72 south of 378[,]" but Mr. Kuzdas testified by deposition that the document referred to the billboards at issue here.

went further, categorizing Plaintiffs' billboards[8] as "TYPE A"–"Any billboard *legally* in existence within Town limits prior to June 24, 1982. (effective date of Sign Ordinance)[.]"

Additionally, Plaintiff presented the deposition testimony of former Town Project Manager Benny Hopkins, who, when asked whether he had "knowledge individually as to whether [the] signs were legal at the time Mr. Trezevant came and asked to have them replaced[,]" answered that "[a]s they stood at that time they were legal. I would say they were legal because if they weren't legal I believe the town would have not allowed him to have the changeable copy face on them." However, he acknowledged that he had no "experience in investigating the legality and opining on the legality of billboards or other structures[,]" and that he did not "go back and pull all the permits . . . to [e]nsure their legality[.]" Similarly, when presented with the "Specific Billboard Signs" document, former Town Planner Jim Kuzdas conceded, in his deposition, that "[s]omebody in the Town . . . knew or thought that this sign was legally in existence . . . within the town limits prior to June 24th, 1982[.]"

At the second BZA hearing, Plaintiff also submitted evidence regarding the existence of the requisite permits. Plaintiff presented another internal Town document prepared by Mr. Hylander on June 24, 1999, styled "Known Tag and Permit Numbers for Billboards," which listed the dates on which *state* permit numbers were applied for, the date such *state* permits were issued, the actual *state* permit numbers, and whether replacement *state* permits had been issued. (emphasis added). The document included further relevant information regarding each billboard–for example, the property owner, billboard location, tax record parcel number, sign relocation contract dates and parties, and annexation information. Importantly, though, the document made no mention of the issuance of *municipal* permits–for the billboards at issue or for any of the other numerous billboards included on the list. Additionally, Plaintiff supplied the original billboard leases dating from 1979 and the Tennessee Department of Transportation ("TDOT") permits from the 1979 erection of the billboard signs. No original municipal permits could be found; however, Town Building Official Bob Herring testified by deposition that his office maintains building permit records "back to the '70s, '80s, something like that[,]" but that many records–possibly including building permits– had been "lost and thrown away" during a move four years prior.

Mr. Trezevant, who, again, purchased the billboards in 1993, testified by deposition that he did "not know when the boards were originally installed did they have building

_____

[8]Again, Mr. Kuzdas explained that although the addresses were incorrectly listed, that the "Specific Billboard Signs" document referenced Plaintiffs' billboards.

-11-

permits." [sic]. However, his "guess would be that nothing goes on in [Collierville] without that Town issuing a permit for such erection, not a sign goes up, not a sign on a building[.]" He explained that "[o]f all the towns that [he has] ever dealt with, and [he has] probably dealt with fifteen different cities, [Collierville] is the most updated, most advanced, most particular what goes on with their town than any town [he has] ever dealt with." Thus, his "guess would be a hundred percent certain before [the original owner] . . . had those signs erected that the Town issued some type of a permit or some type of approval . . . . It just didn't happen."

Randall Swaney, a former owner of the billboards at issue, also testified by deposition regarding the existence of permits:[9]

I have personal knowledge that both signs [at issue in this case] were erected prior to enactment of the 1982 Collierville Billboard Ordinance, and that both signs were completely legal when they went up.

I started with Naegele Outdoor Advertising ("Naegele") in 1981.

From 1987 to 1991, I was the president of Naegele.

From 1997 to 1998, I was the president of Universal Outdoor Advertising ("Universal").

While I was president of Naegele, Naegele owned the subject signs.

It was my job to know every aspect of each sign location in our inventory, in terms of: lease value, advertising value, and long term desirability of the locations.

I was familiar with every billboard sign location in the Naegele inventory, including the subject signs.

Naegele had approximately 2,000 total billboard signs, but Naegele had fewer than ten (10) billboard signs in the Town of Collierville and the immediately surrounding area.

The subject signs were the last two (2) billboard signs built in Collierville.

The subject signs were the two most valuable in the Collierville inventory.

The subject Collierville signs were high priority signs and were of great

---

[9]Plaintiff argued at the BZA hearing that Mr. Swaney was paid as an expert witness, but the Town contended that he was merely a fact witness–testifying that "he saw a piece of paper in a file.". It appears that the BZA considered Mr. Swaney a fact witness, and we agree with this determination.

importance to me and to the company.

. . . .

In 1991, while president of Naegele, I raised $25,000,000 to purchase the company. One of the loan requirements from First Tennessee Bank was to certify for the entire inventory which signs had permits and which did not.

I personally reviewed the company files and verified that the subject signs were fully permitted both locally and by the State of Tennessee.

. . . .

I verified to First Tennessee Bank that the two subject billboards had been permitted by Collierville since before the passage of the 1982 Collierville Billboard Ordinance and had appropriate building permits.

. . . .

The local building permits and State of Tennessee sign permits were in the Naegele file at the time I left the company. If they are not still included in the file . . . I have no explanation as to where they have gone or what has happened to them.

However, after conforming his affidavit testimony at his deposition, Mr. Swaney acknowledged that he was being paid for his testimony on a contingent basis:

"I told [Mr. Trezevant], I said Trip, I know all about these signs; and I said, I think you got done wrong; and I said, if I can help you win your case, then you'll pay me five grand. If you don't win, you don't pay me anything.[10]

At the second BZA hearing, the Town conceded that it had no "document that says these two signs were *illegal* non-conforming uses[,]" and it admitted that "[e]very alderm[a]n, every Town official, everyone in Collierville assumed those signs were legal until [the issue of their legality] came up. . . . [because] [p]eople don't generally assume that folks build illegal things in corporate limits. People don't generally assume that towns and aldermen and officials allow illegal uses to continue[.]" (emphasis added). However, it argued that assumptions or assurances of legality did not equate to legality, and it contended that Plaintiff, by failing to offer proof of the issuance of municipal permits–save the "problematic" testimony of Mr. Swaney–had failed to carry its burden of proving the

_____

[10]Apparently the payment situation was "remedied" *after* the deposition and affidavit testimony was provided.

structures were legal prior the 1982 amendment. It clarified that it was not advocating that the BZA require Plaintiff to present the actual municipal permits, but only that it consider the "totality of the evidence" to determine whether Plaintiff "has shown that more likely than not these billboards were legally permitted and constructed in 1979."

Similarly, Plaintiff "implore[d] the [BZA] to put down the idea that if you don't show up with the building permit, we have to decide that from 1979 . . . that those signs aren't legal." It argued that "all of the evidence, bar none, states that the Town thought these signs were legal. Were legally in existence at the time of the passage of the billboard. . . . The Town's employees have universally stated their thought that these signs were legal. The mere fact that in a town like Collierville something can stand for 30 years, again while not proof positive, should be weighed heavily by this body."

Following the parties' closing arguments, the BZA members were asked to "state their position and give some reasoning behind it." Mr. Counts, who voted to uphold the prior BZA decision, stated, in part:

It appears to me that what caused the search for the original permit was the provision in the October of 2007 letter that said a permit was required. And, therefore, we now began this inquiry into whether what was permitted and it led ultimately to what was originally permitted, and so we look for a permit.

As far as the testimony of various Town employees, [Town Building Official] Mr. Herring had an opinion, but he didn't know that permits had been lost. [Former Town Project Planner] Mr. Hopkins repeatedly said that he didn't make any personal effort to research whether a permit had ever been originally awarded. And Mr. Swaney, although it may have been cleared up now, his arrangement of being paid money contingent on the outcome of the case as far as I'm concerned taints his testimony.

Now, why because [Mr. Hylander] was so thorough, he didn't include within his list of facts the [municipal] building permits for all those signs, you know, I don't know. But what is interesting is that none of those [billboards] had building permits listed. So if nothing else, he was consistent.

Chairman Stamps, who likewise voted to affirm the prior BZA decision, reasoned in part, as

-14-

follows:

> [T]here's a lot of information and a lot of questions that I have and a lot of conflicting points that were brought up as to some of the depositions, [Town Planner] Mr. Kuzdas . . . I do believe that without doing the research, he took it for granted as some of the statements said that . . . they were legal because they were there. . . .

> The letter of the law is that when we met two years ago we asked to clear all this up if there were permits, please produce those permits. And it was said that 99 percent sure that those could be produced. . . .

> I think that with all the attention that these signs have gotten and their positions that I would think that everything would have . . . been done correctly. But I don't see that. So that's what I'm struggling with. It's been brought up that the burden of proof has to go on the applicant, and it was brought up to us is this Board that if we see overwhelming evidence . . . then we can change our views or change how the outcome of this Board determined two years ago. . . .

> I think that in everything that I read they were asked several times for permits, conditions of permits, and every documentation that we see that it could move forward if there was documentation on the permits.

The BZA then voted 2-1 to uphold its prior decision–upholding the stop work orders and denial of building permits.

However, as outlined in detail above, the chancery court found that the BZA had improperly insisted upon the production of municipal building permits, and that the record contained "somewhat overwhelming evidence" to support the billboards' legality with no evidence to the contrary. Thus, it determined that the BZA had acted illegally, arbitrarily and capriciously, and it invalidated the stop work orders and declared that Plaintiff "is allowed to reconstruct the billboard signs[.]"

On appeal, the Town argues that the chancery court improperly reweighed the

-15-

evidence and that it improperly shifted the burden of proof to the Town. Plaintiff, of course, argues that the chancery court properly overturned the BZA's decisions, as the BZA illegally, arbitrarily and/or capriciously insisted upon the production of municipal building permits to the exclusion of all other evidence, and it employed the wrong evidentiary standard, looking for "overwhelming evidence" to overturn its prior decision.

After thoroughly reviewing the mass of evidence in this case, we find no support for Plaintiff's argument, and the chancery court's conclusion, that the BZA insisted upon the production of the original municipal permits. We acknowledge that the BZA members made repeated references to "permits." However, these references indicated an obvious *desire* for such–in order to end the legality inquiry–rather than a *demand* for such.[11] From their statements and references to other types of evidence, as well as their discussions regarding matters of credibility, it is clear that the BZA members considered all of the evidence, including the absence of permits, and that they did not simply cease the legality inquiry upon learning that no municipal permits could be found.

Furthermore, we conclude that the BZA did not employ an incorrect evidentiary standard, thus rendering its decision "illegal." At the commencement of the second BZA hearing, the Town's attorney instructed the BZA as follows:

> Under the law, the applicant has the burden of proof to establish by a preponderance of the evidence that the billboards were legal non-conforming signs at the time the '82 Collierville sign ordinance was adopted.
>
> . . . .
>
> In this matter [Plaintiff] . . . has the burden of establishing by a preponderance of the evidence all the facts necessary to prove the following issue: Whether or not the subject billboard signs were legal non-conforming signs at the time the 1982 Collierville sign ordinance was adopted. The term preponderance of the evidence means that amount of evidence that causes you to conclude than an allegation is probably true.
>
> To prove an allegation by a preponderance of the evidence, a party must convince you that the allegation is more likely true than not. If the evidence

_____

[11]At the first BZA hearing, Mr. Stamps stated that "the applicant feels like he can produce a permit so that to me rest[s] on his shoulders as far as burden of proof on the applicant. And if he can do this, this is stretched out that he can probably see light at the end of the tunnel and be able to produce that permit and we would not have to have this discussion any more."

on a particular issue is equally balanced, that issue has not been proven by a preponderance of the evidence, and the party having the burden of proving that issue has failed. You must consider all of the evidence on the issue presented.

Likewise, in closing arguments, the Town asked the BZA to "weigh the evidence that's been presented. . . . [and] [f]ind where the preponderance of the evidence lies." There is simply nothing in the record to indicate that Mr. Stamps, a layman, deviated from the clearly pronounced "preponderance of the evidence" standard, despite his mis-characterization of it as "overwhelming"–an unrecognized standard of proof.

Mindful of the "very narrow" standard of review constraining both this Court and the chancery court, *see Powell v. Parole Eligibility Review Bd.*, 879 S.W.2d 871, 873 (Tenn. Ct. App. 1994), we are compelled to find that the chancery court erred in overturning the BZA's decisions. From all accounts, everyone in Collierville, including the Town itself, assumed that the billboards had been legally erected based upon their unchallenged existence for approximately thirty years. However, as the case of *Rives v. City of Clarksville*, 618 S.W.2d 502, 506 (Tenn. Ct. App. 1981) unequivocally states, "The clear meaning of [Tennessee Code Annotated section] 13-7-208 is that the use must be permitted by the zoning regulations, not permitted through lax enforcement. The failure of the City to enforce the ordinance for a period of time does not estop the City from enforcing it eventually." Moreover, assurances from Town officials cannot conclusively "legalize" an otherwise legal use. As this Court noted in *Capps v. Metro. Gov't of Nashville & Davidson Co.*, No. M2007-01013-COA-R3-CV, 2008 WL 5427972, at *13 (Tenn. Ct. App. 2008),

> Courts have refused to recognize estoppel in favor of 'one who expends money or creates liability in reliance upon oral statements of administrative officials[,]' *See, e.g., Westchester Co., LLC v. Metro. Gov't of Nashville & Davidson Co.*, No. M2004-02391-COA-R3-CV, 2005 WL 3487804, at *4 (Tenn. Ct. App. 2005) (rejecting an estoppel argument where the applicant was "advised by Metro employees 'that the property was properly zoned, that the property could be developed as a residential multi-use property, and that no mistakes concerning the zoning of the property had been made by Metro.'"); *Corlew's Auto Salvage, Inc. v. Murfreesboro Bd. of Zoning Appeals*, No. 89-38-II, 1989 WL 54913, at *7 (Tenn. Ct. App. May 24, 1989). In *Far Tower Sites[, LLC v. Knox County*, 126 S.W.3d 52, 66 (Tenn. Ct. App. 2003)], the Court rejected the notion that an applicant obtains vested rights by relying upon an "inquiry of the proper officials," explaining:

It is certainly conceivable that such an official might not be well-versed in the legal intricacies of a thick zoning ordinance. It goes without saying that such officials are of varying levels of education, training, intelligence, competence, and, most importantly, knowledge and comprehension of the law pertaining to their official duties.

126 S.W.3d at 66.

*See also Capps*, 2008 WL 5427972, at *13 n.6 ("Courts are reluctant to leave the public unprotected due to an error by a government official.")[12] (citing Julian Conrad Juergensmeyer & Thomas E. Roberts, *Land Use Planning & Dev. Regulation Law* § 5.29 (2003)).

Primarily, the record before the BZA contained no credible proof that municipal building permits were ever obtained, such that the billboards were "legal" structures prior to the 1982 amendment. Witnesses merely "guess[ed]" that such permits had been procured based upon the structures' existence, rather than upon any actual knowledge of permit compliance. The Town did not prove that the requisite municipal permits *were not* obtained, but that was not its burden to so prove. To qualify for protection under Tennessee Code Annotated section 13-7-208, Plaintiff was required to prove that its use was legal prior to the 1982 amendment. In this case, "proving legality" meant proving receipt of state and municipal permits. The only "proof" offered to show that municipal permits were obtained came from a paid witness, which at least one member of the BZA expressly discredited.[13] Based upon the lack of credible proof regarding the issuance of municipal permits, we find that the BZA was justified in upholding the Town's stop work orders and in upholding the Town's denial of Plaintiff's requested building permits. Accordingly, we find that the BZA's decisions were not illegal, arbitrary, or capricious. In so finding, we reiterate that under the applicable standard of review, we may not inquire into the intrinsic correctness of the BZA's decisions, nor may we substitute our own judgment for that of the BZA. *Moore*, 246 S.W.3d

---

[12] In *Capps*, we recognized that under "exceptional circumstances," for example where a "public body took affirmative action that clearly induced a private party to act to his or her detriment[,]" estoppel has been applied against a municipality. 2008 WL 5427972, at *13 (quoting *Amos v. Metro. Gov't of Nashville & Davidson Co.*, 259 S.W.3d 705, 709 n.5 (Tenn. 2008)). However, we find no "exceptional circumstances" in this case to justify estopping the Town from challenging the billboards' legality.

[13] Again, Mr. Counts found Mr. Swaney's testimony was "tainted[,]" and BZA member Austin Wortman, who voted to overturn its prior decision, stated that his decision was "not going to be based on the information of Mr. Swaney.

at 574 (citations omitted).

## V. CONCLUSION

For the aforementioned reasons, we reverse the decision of the chancery court, and we reinstate the decisions of the Board of Zoning Appeals. Costs of this appeal are taxed to Appellee, Abbington Center, LLC, for which execution may issue if necessary.

_____

ALAN E. HIGHERS, P.J., W.S.