IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
July 22, 2014 Session

## TOWN OF COLLIERVILLE, ET AL. v. TOWN OF COLLIERVILLE BOARD OF ZONING APPEALS, ET AL.

**Appeal from the Chancery Court for Shelby County**
**No. CH1302031     Walter L. Evans, Chancellor**

_____

**No. W2013-02752-COA-R3-CV – Filed April 7, 2015**

_____

The Town of Collierville, Tennessee, passed an ordinance prohibiting the construction of new billboards. The Town, through its Development Department, asserted that two billboards erected prior to the passage of the ordinance were illegal and ordered that they be removed. The owner of the billboards appealed the removal order to the Board of Zoning Appeals, which did not affirm the order. The Town and the Development Department petitioned for writ of certiorari, seeking judicial review of the decision of the Board of Zoning Appeals. The Shelby County Chancery Court dismissed the petition for lack of standing. We conclude that the Town and the Development Department have standing. Therefore, we reverse the judgment of the trial court and remand for proceedings consistent with this opinion.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Reversed and Remanded**

W. Neal McBrayer, J., delivered the opinion of the Court, in which J. Steven Stafford, J., and Kenny W. Armstrong, Sp. J., joined.

Taylor A. Cates and Charles Silvestri Higgins, Memphis, Tennessee, for the appellants, Town of Collierville and Town of Collierville Development Department.

David C. Riley, Memphis, Tennessee, for the appellees, Town of Collierville Board of Zoning Appeals including those persons who were its members on December 20, 2012, Steven Counts, Auston Wortman, Thomas Swan, Lance Warren, and Maurice Oswell, in their official capacities and Bradley Rice and David Hamilton, who were appointed to said Board to serve during 2013 in their official capacities.

Richard L. Winchester, Memphis, Tennessee, for the appellee, Abbington Center, a Tennessee General Partnership having as one of its general partners, Stanley H. Trezevant, III.

## OPINION

## I. FACTS AND PROCEDURAL HISTORY

This is the second appeal concerning two billboards located in Collierville, Tennessee, (the "Town") on land currently owned by Abbington Center ("Abbington"). *See Abbington Center, LLC v. Town of Collierville*, 393 S.W.3d 170 (Tenn. Ct. App. 2012). As related in the previous opinion, the billboards were constructed in December 1979. *Id.* at 172. At that time, building permits and a sign permit fee were the only requirements for construction of a billboard in the Town. *Id.* On June 24, 1982, the Town passed an ordinance prohibiting the construction of any new billboards. *Id.* at 173.

Abbington[1] purchased the billboards in 1993. *Id.* Abbington began making inquiries as to whether the billboards were "grandfathered in" and could be torn down and reconstructed. *Id.* The Town assured Abbington that the billboards were "grandfathered in." Shortly thereafter, Abbington discovered that the billboards were leased for use by a third party for fourteen years, so Abbington did not pursue the matter. *Id.*

In 2007, Abbington submitted proposed designs to the Town's Design Review Commission for new billboards to replace the billboards in question. The Design Review Commission approved the design with the requirement that Abbington obtain building and electrical permits for the billboards. *Id.* Abbington began removing and replacing the old billboards but failed to apply for the permits. Therefore, the Town posted "Stop Work" orders at the sites for both billboards. *Id.*

Abbington subsequently applied for the necessary permits. The Town denied the permits on the basis that the billboards did not constitute a legal nonconforming use. The Town asserted that there was no proof that the requisite permits were obtained for the construction of the billboards in 1979. *Id.* Abbington appealed the decision to the Board of Zoning Appeals ("BZA"). The BZA affirmed the Town's stop work orders and the denial of the request for building permits. *Id.*

---

[1] According to the petition for writ of certiorari, Abbington acquired its interest in the billboards from Abbington Center, LLC in 2009. For the sake of simplicity, we also refer to Abbington's predecessor-in-interest as "Abbington."

Abbington filed a petition for writ of certiorari to the chancery court. *Id.* Following a remand and second hearing before the BZA, the chancery court invalidated the stop work orders and permitted Abbington to reconstruct the billboards. *Id.* at 173-74. The Town then appealed to the Court of Appeals, but while the appeal was pending, Abbington reconstructed the billboards.

This Court determined that Abbington had not proven that the requisite municipal permits had been obtained when the billboards were originally constructed in 1979. *Id.* at 184. Therefore, we reversed the decision of the chancery court and reinstated the decision of the BZA. *Id.* at 184-85.

After the decision in this Court, on October 4, 2012, the Development Department[2] sent a letter to Abbington directing the removal of the reconstructed billboards because they were in violation of the Town's ordinances. In doing so, the Development Department relied upon this Court's judgment reinstating the BZA's decision, which affirmed the stop work orders and denial of the requested permits.[3] On November 2, 2012, Abbington appealed to the BZA.

On December 20, 2012, the BZA heard Abbington's appeal. The BZA heard testimony from the Development Department employee who sent the letter and Mr. Stanley T. Trezevant, III, one of the partners of Abbington. Mr. Trezevant presented a "State of Tennessee Department of Transportation Outdoor Advertising Device Application and Permit" stating a sign erection date of December 15, 1979, to demonstrate that the billboards in question should be grandfathered. He also testified regarding what he had discovered about the history of the billboards and Abbington's ownership of the billboards. The BZA voted 2-2 on a motion to affirm the Development Department's removal order. Because it was a tie, the motion to affirm failed, which allowed the billboards to remain.

Under Ordinance § 151.308(F)(5) of the City of Collierville, Tennessee Code of Ordinances, "[a]ny officer, agency or department of the Town . . . or other aggrieved party may appeal any decision of the [BZA] to a court of competent jurisdiction as provided for by state law." Collierville, Tenn., Ordinances § 151.308(F)(5) (2009). On February 12, 2013, the Town and the Development Department appealed the BZA's decision, by writ of certiorari, to the Shelby County Chancery Court naming the BZA and Abbington as defendants.

---

[2] The Department of Development Services or Development Department has the responsibility for sign regulations. *See* City of Collierville, Tenn., Code of Ordinances § 151.182(A) (2014).

[3] The letter stated, "As you are aware, this matter has been fully adjudicated and it has been judicially determined that these signs are illegal structures."

Both the BZA and Abbington filed Rule 12.02(6) motions, pursuant to the Tennessee Rules of Civil Procedure, to dismiss arguing, among other things, that the Town and the Development Department did not have standing to appeal the BZA's decision. In response, the Town and Development Department argued that they were aggrieved by the BZA's decision because they could not enforce the 1982 ordinance prohibiting the construction of new billboards.

On November 5, 2013, the chancery court entered a final judgment in which it dismissed the Town and Development Department's petition for lack of standing. The chancery court's order stated, in pertinent part:

1.    The Town of Collierville Board of Zoning Appeals, by State Statute and Town Ordinances, is the only entity having the power, authority, and responsibility to determine the position of the Town of Collierville with regard to whether or not a town official has made an error in any determination. No other entity, person or board of the Town of Collierville was authorized to review, overrule, or challenge the decision of the Collierville Board of Zoning Appeals.

2.    T.C.A. §27-9-101 allows an appeal from a board of zoning appeals ruling only by a person who may be "aggrieved". Although Plaintiff argues that Collierville Town Ordinance §151.308(f)(5) also allows "any officer, agency, or department of the Town of Collierville" to appeal pursuant to T.C.A. §27-9-101, the Court finds that this attempt by the Town of Collierville, by Ordinance, to modify T.C.A. §27-9-101 so as to give itself jurisdiction, is null and void, being in conflict with the State Statute.

3.    The decision by the Board of Zoning Appeals was the position of the Town of Collierville with regard to whether or not [the Development Department] acted erroneously. The Town of Collierville cannot, as a matter of law, challenge its own positions.

4.    The Town of Collierville was not an "aggrieved" party and, accordingly, is not authorized by T.C.A. §27-9-101 to challenge the decision of its Board or Zoning Appeals by Writ of Certiorari.

5.    The Court has, accordingly, determined that Defendants' respective Motions to Dismiss, for the reasons above stated, should be granted, and that costs should be assessed to Plaintiff;

6. Having granted the Motions to Dismiss, the Court has not ruled on the merits of the underlying Petition.

## II. ANALYSIS

### A. STANDARD OF REVIEW

The Town and its Development Department present two issues for review: (1) Whether the trial court erred in ruling that neither the Town nor its Development Department has standing to appeal the BZA's decision not to affirm the removal order issued by the Town and Development Department for the removal of Abbington's billboards; and (2) Whether the Board of Zoning Appeals acted illegally, arbitrarily, and without material evidence in voting not to affirm the removal order issued by the Town and its Development Department for the removal of the Abbington billboards.

Lack of standing may be raised as a defense in a Tennessee Rule of Civil Procedure 12.02(6) motion to dismiss. *Knierim v. Leatherwood*, 542 S.W.2d 806, 808 (Tenn. 1976). A Rule 12.02(6) motion, also known as a motion to dismiss for failure to state a claim upon which relief can be granted, "challenges only the legal sufficiency of the complaint, not the strength of the plaintiff's proof or evidence." *Webb v. Nashville Area Habitat for Humanity, Inc.*, 346 S.W.3d 422, 426 (Tenn. 2011). Therefore, "[t]he resolution of a 12.02(6) motion to dismiss is determined by an examination of the pleadings alone." *Id.* By filing a motion to dismiss, the defendant "admits the truth of all of the relevant and material allegations contained in the complaint, but . . . asserts that the allegations fail to establish a cause of action." *Leach v. Taylor*, 124 S.W.3d 87, 90 (Tenn. 2004); *see also Webb*, 346 S.W.3d at 426; *Brown v. Tenn. Title Loans, Inc.*, 328 S.W.3d 850, 854 (Tenn. 2010); *Freeman Indus., LLC v. Eastman Chem. Co.*, 172 S.W.3d 512, 516 (Tenn. 2005). When a complaint is challenged by a Rule 12.02(6) motion, the complaint should not be dismissed unless it appears that the plaintiff can prove no set of facts in support of his or her claim that would warrant relief. *Doe v. Sundquist*, 2 S.W.3d 919, 922 (Tenn. 1999) (citing *Riggs v. Burson*, 941 S.W.2d 44, 47 (Tenn. 1997)). Making such a determination is a question of law. Our review of a trial court's determinations on issues of law is de novo, with no presumption of correctness. *Id.* (citing *Stein v. Davidson Hotel Co.*, 945 S.W.2d 714, 716 (Tenn. 1997)).

### B. STANDING

Standing is a judicially created doctrine that asks whether a party advancing a claim is "properly situated to prosecute the action." *Knierim*, 542 S.W.2d at 808. Courts "may and properly should refuse to entertain an action at the instance of one whose rights have not been invaded or infringed." *Mayhew v. Wilder*, 46 S.W.3d 760, 767 (Tenn. Ct.

App. 2001) (quoting 59 Am. Jur. 2d *Parties* § 30 (1987)).  Standing limitations also restrict judicial power by keeping courts from deciding "abstract questions of wide public significance even though other governmental institutions may be more competent to address the questions and even though judicial intervention may be unnecessary to protect individual rights."  *Warth v. Seldin*, 422 U.S. 490, 500 (1975).

Standing's limits are both constitutional and prudential in nature.  *Id*. at 498; *City of Memphis v. Hargett*, 414 S.W.3d 88, 98 (Tenn. 2013).  Constitutional standing requires the plaintiff to "show that he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant."  *Gladstone, Realtors v. Vill. of Bellwood*, 441 U.S. 91, 99 (1979).  At an "irreducible minimum," (1) the party bringing the claim must have suffered a distinct and palpable injury; (2) there must be a causal connection between the injury and the conduct challenged; and (3) the injury must be redressable through a favorable decision of the court.  *Hargett*, 414 S.W.3d at 98; *Fannon v. City of LaFollette*, 329 S.W.3d 418, 424 (Tenn. 2010).

Prudential standing refers to "other limits on the class of persons who may invoke the courts' decisional and remedial powers."  *Warth*, 422 U.S. at 499.  Thus, the court declines to entertain claims asserting the legal rights of others, of an abstract nature, or that fall outside "'the zone of interests to be protected or regulated by the statute or constitutional guarantee in question.'"  *Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*, 454 U.S. 464, 474-75 (1982) (quoting *Ass'n of Data Processing Serv. Orgs. v. Camp*, 397 U.S. 150, 153 (1970)); *Hargett*, 414 S.W.3d at 98.

A standing analysis focuses on the party, rather than the merits of the claim. *Metro. Air Research Testing Auth., Inc. v. Metro. Gov't of Nashville and Davidson Cnty.*, 842 S.W.2d 611, 615 (Tenn. Ct. App. 1992).  Even so, the standing inquiry "often turns on the nature and source of the claim asserted."  *Id*.  The claim can be, and often is, "created or defined by statute."  *Wood v. Metro. Nashville & Davidson Cnty. Gov't*, 196 S.W.3d 152, 158 (Tenn. Ct. App. 2005).

The question of whether a particular plaintiff has a cause of action under a statute has been referred to as "statutory standing."  *See, e.g.*, *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 92, 97 (1998).  Statutory standing requires the plaintiff's injury to "arguably [fall] within the zone of interests to be protected or regulated by the statute or constitutional guarantee in question." [4]  *Camp*, 397 U.S. at 153; *see also Steel Co.*, 523 U.S. at 97; *Wood*, 196 S.W.3d at 158.  Statutory standing has been described as falling

---

[4] Referring to the zone of interest test as statutory standing might be a misnomer.  The zone of interest test has also been described as a tool of statutory interpretation.  *See Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1387 (2014); *see also* Radha A. Pathak, *Statutory Standing and the Tyranny of Labels*, 62 Okla. L. Rev. 89, 103 (2009).

within the "rubric" of prudential standing. *Lexmark Int'l, Inc. v. Static Control Components, Inc*., 134 S. Ct. 1377, 1387 (2014). However, statutory standing has also been associated with the distinct and palpable injury element of constitutional standing. *See, e.g*., *State v. Harrison*, 270 S.W.3d 21, 28 (Tenn. 2008).

In this case, the Town and the Development Department sought review of the BZA decision and the trial court ultimately dismissed the appeal based on Tennessee Code Annotated § 27-9-101. Under Tennessee Code Annotated § 27-9-101, "[a]nyone who may be aggrieved by any final order or judgment of any board or commission functioning under the laws of this state may have the order or judgment reviewed by the courts, where not otherwise specifically provided . . . ." Tenn. Code Ann. § 27-9-101 (2000). The trial court concluded that the Town and the Development Department were not "aggrieved" parties within the meaning of the statute.

We have held that use of the term "aggrieved" in the statute "reflects an intention to ease the strict application of the customary standing principles." *City of Brentwood v. Metro. Bd. of Zoning Appeals*, 149 S.W.3d 49, 57 (Tenn. Ct. App. 2004). Consequently, we interpret the term broadly. *See id*. "When applied to local governments, aggrievement encompasses interference with a local government's ability to fulfill its statutory obligations, . . . or substantial, direct, and adverse effects on the local government in its corporate capacity." *Id*. at 58 (citations omitted).

The chancery court concluded that the Town and the Development Department could not be aggrieved, despite our prior interpretations of the term, because the BZA was the sole "entity having the power, authority, and responsibility to determine the position of the Town of Collierville with regard to whether or not a town official has made an error in any determination." We respectfully disagree. Neither the state statute nor the Town's ordinances would support such a conclusion.

One could properly conclude, by reference to both the state statute and the Town ordinance, that the BZA was not the final word on the Town's position. Appeals to boards of zoning appeals "may be taken by any person aggrieved or by any officer, department, board or bureau of the municipality affected by any . . . act or decision of . . . [an] administrative official." Tenn. Code Ann. § 13-7-206(b) (2011). As we have previously stated:

It stands to reason that the scope of the statute defining who may appeal to the board should be the same as the scope of the statute defining who may seek judicial review of a board's decision. After all, persons authorized to appeal to the Board from an adverse decision by the zoning administrator should likewise be authorized to seek judicial review if the Board's

decision is not to their liking. Any other conclusion would create an anomalous situation where some persons appealing to the Board would be entitled to judicial review while others would not.

*City of Brentwood*, 149 S.W.3d at 57. As noted above, the Town ordinance creating the BZA specifically permits "[a]ny officer, agency or department of the Town" to appeal a decision of the BZA. Collierville, Tenn., Ordinances § 151.308(F)(5).

We conclude that the Town and its Development Department are aggrieved parties within the meaning of Tennessee Code Annotated § 27-9-101. By statute, the Town,

[f]or the purpose of promoting the public health, safety, moral, convenience, order, prosperity and general welfare, . . . is empowered . . . to regulate the location, height, bulk, number of stories and size of buildings and other structures . . . and the uses of buildings, structures and land for trade, industry, residence, recreation, public activities and other purposes . . . .

Tenn. Code Ann. § 13-7-201(a)(1) (Supp. 2014). The Development Department, in turn, has been authorized and directed by the Town to enforce its sign regulations. Collierville, Tenn., Ordinances § 151.182(A) (2014). The Development Department has also been granted the authority to have signs removed. Tenn. Code Ann. § 151.182(A)(1). The Town and its Development Department have alleged that the BZA's decision violates ordinances that the Town is empowered to adopt and the Development Department is directed to enforce.

Both the Town and its Development Department fall within the "zone of interests" sought to be protected by the ordinance prohibiting the construction of new billboards. The Town is specifically vested with authority to enforce such ordinances:

In case any building or structure is or is proposed to be erected, constructed, reconstructed, altered, converted or maintained, or any building, structure or land is or is proposed to be used in violation of any ordinance enacted under this part and part 3 of this chapter, the building commissioner, municipal counsel or other appropriate authority of the municipality, . . . may, in addition to other remedies, institute injunction, mandamus or *other appropriate action* or proceeding to prevent such unlawful erection, construction, reconstruction, alteration, conversion, maintenance or use, or to correct or abate such violation . . . .

Tenn. Code Ann. § 13-7-208(a)(2) (2011) (emphasis added). The enforcement statute recognizes that zoning ordinances protect the interests of municipalities, like the Town, and grants them authority to protect such interests in court.

For these reasons, we conclude that both the Town and its Development Department have standing to seek review of the BZA's decision.[5] Consequently, the trial court erred in dismissing the petition for writ of certiorari.

## C. THE TOWN'S ASSERTION THAT THE BZA ACTED ILLEGALLY AND ARBITRARILY

The Town and Development Department also argue on appeal that if we determine that they have standing, we should proceed to address the merits of the case. We decline to do so. The trial court did not reach the merits, specifically stating so in its order dismissing the petition for lack of standing.

## III. CONCLUSION

The judgment of the trial court is reversed, and this matter is remanded for further proceedings consistent with this opinion.

_____
W. NEAL McBRAYER, JUDGE

---

[5] We have also concluded that metropolitan governments have standing to challenge the decisions of their boards of zoning appeals under Tennessee Code Annotated § 27-9-101. *Metro. Gov't of Nashville-Davidson Cnty., Tenn. v. Bd. of Zoning Appeals of Nashville and Davidson Cnty., Tenn.*, No. M2013-01283-COA-R3-CV, 2014 WL 4364852 (Tenn. Ct. App. Sept. 3, 2014), *perm. app. granted*, (Tenn. Jan. 16, 2015) ("*Metro Nashville I*"). In that case, the issue was treated as a question of constitutional standing. *Id*. at *2. The court later adopted the analysis of *Metro Nashville I* in *Metropolitan Government of Nashville and Davidson County, Tennessee v. Board of Zoning Appeals of Nashville and Davidson County, Tennessee*, No. M2013-00970-COA-R3-CV, 2014 WL 5147757 (Tenn. Ct. App. Oct. 13, 2014), *perm. app. pending* (on Feb. 11, 2015, our supreme court filed a notice that the court's decision granting or denying the Rule 11 Application would be delayed).