# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs October 4, 2016

## GREGORY A. SNOW v. TURNEY CENTER DISCIPLINARY BOARD, ET AL.

**Appeal from the Chancery Court for Hickman County**
**No. 15-CV-5638   Joseph Woodruff, Judge**
_____

### No. M2016-01148-COA-R3-CV – Filed December 22, 2016
_____

An inmate was relocated from one cell to another in 2012 as part of a large-scale inmate reassignment, and two knives were found in the door to the inmate's cell in 2015. The inmate was charged with the possession of a deadly weapon and was found guilty by the disciplinary board following a hearing. The inmate claimed he did not know anything about the knives and that he did not believe the cell was searched prior to his reassignment, as the prison policies require. The inmate exhausted his administrative appeals before filing a petition for writ of certiorari. In an effort to prove his cell was not searched prior to his reassignment and that the evidence did not support his conviction, the inmate sought permission to discover documents from the State, which the trial court denied. The trial court granted the writ of certiorari but denied the inmate any relief. The inmate raises several issues on appeal. We affirm the trial court's judgment in all respects.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

ANDY D. BENNETT, J., delivered the opinion of the court, in which CHARLES D. SUSANO, JR., J., and J. STEVEN STAFFORD, P.J., W.S., joined.

Gregory A. Snow, Only, Tennessee, Pro Se.

Herbert H. Slatery, III, Attorney General and Reporter; Andrée Blumstein, Solicitor General; and Madeline Bertasi Brough, Assistant Attorney General, for the appellees, Turney Center Disciplinary Board, et al.

# OPINION

## I. FACTUAL AND PROCEDURAL BACKGROUND

Gregory A. Snow is an inmate at Turney Center Industrial Complex ("TCIX"), a division of the Tennessee Department of Correction ("TDOC"). On August 4, 2015, Corporal Robert Story and Officer Clint Zyla performed a search of Cell 2A-230 and found two homemade knives inside the door to the cell. Mr. Snow was one of the occupants of Cell 2A-230 at that time and was charged with the disciplinary infraction of possession of a deadly weapon. Mr. Snow was transferred to segregation pending a disciplinary hearing. Mr. Snow pleaded "not guilty" to the charge and was appointed an inmate advisor to represent him at the hearing, which took place eight days after the knives were discovered. The Disciplinary Report Hearing Summary contains the following statement by Mr. Snow:

> I've been locked up since 06 and never had a disciplinary. I had no knowledge of those knives. They haven't searched in a long time and I've never seen them check the door.

The disciplinary board was provided with the physical evidence and a Disciplinary Report that described the two knives as "5″ and 9″ homemade knives" and identified their status as "good condition." The report also contained the following description of the search:

> On 08/04/15 at 12:15 pm a search of 2A 230 was performed by Corporal Robert Story and Officer Clint Zyla. Two homemade knives were removed from inside the door. One icepick style 5″ long and one flat metal sharpened to a point 9″ long. Inmates Gregory Snow #410694 and [his cellmate] are assigned to this cell, and are being charged with possession of a deadly weapon and moved to Unit Five pending hearing. Captain William Bishop approved this disciplinary report.

The disciplinary board found Mr. Snow "guilty based on report & evidence presented of 2 knives found in the door of inmate Snow's cell." Mr. Snow was found guilty of a Class A disciplinary offense, possession of a deadly weapon, and sentenced to a fine of five dollars, twelve-month package restriction, three months' loss of good time credit, and ten days of segregation.

Mr. Snow appealed to the warden and to the commissioner of the TDOC. In his appeal to the warden, Mr. Snow argued that the knives were placed in the door to his cell before he was moved there and that the only reason the door to his cell was searched was the receipt of confidential information. The warden affirmed the conviction and wrote: "Inmate moved to the cell on 5-30-2012 where he remained until 8-4-2015. Shanks

appeared relatively new." In his appeal to the commissioner, Mr. Snow asserted a violation of a TCIX policy requiring vacant cells to be searched and inspected before being occupied by new inmates and further requiring unit staff to "enter all vacant cells on TOMIS conversation LIBQ, Cell Search Request."[1] The commissioner affirmed Mr. Snow's conviction, stating that Mr. Snow had failed to support his allegations that the warden had reached an incorrect decision when reviewing his original appeal.

After exhausting his administrative appeals, Mr. Snow filed a petition for common law writ of certiorari in the Chancery Court for Hickman County. In his petition, Mr. Snow asserted that there was a lockdown at TCIX on May 30, 2012, and all prisoners were reassigned to housing units. Mr. Snow explained that he was not given a choice about the cell reassignment and that he was relocated to a cell that had formerly been occupied by a gang member. Mr. Snow also asserted that one of the knives found in the door to his cell was made out of stainless steel bar, which came from old dust mops that were removed from TCIX immediately following the 2012 cell reassignment. Mr. Snow wrote, "Ironically enough, [these mops] were removed because so many knives were being made out of them."

In his petition, Mr. Snow alleged that the vacant cells were not searched during the 2012 lockdown and inmate reassignment, and he cited the following TDOC and TCIX policies:

> TDOC Policy 506.06, Section VI, I, 3, (b): There *shall* be a complete search and inspection of each vacant room/cell before it is occupied by a new inmate. The Warden/Designee *shall* enter all vacant cells on TOMIS conversation LIBQ, Cell Search Request.

> TDOC Policy 506.06, Section VI, I, 3, (c): The Warden/Designee *shall* identify the number of occupied cells/rooms that are to be searched. The cell search request shall be entered on TOMIS conversation LIBQ. The employee designated to conduct the search *shall* enter the Cell Search Results on TOMIS conversation LIBR within 48 hours of completing the search.

> TCIX Local Policy 506.06-1, Section VI, J, 7: . . .Vacant cells *shall* be searched and inspected before [they are] occupied by a new inmate. Unit staff *shall* enter all vacant cells on TOMIS conversation LIBQ, Cell Search Request. Searching staff *shall* enter the Cell Search Results on

---

[1]TOMIS is an acronym for the Tennessee Offender Management Information System, a database maintained by the TDOC. The meaning of LIBQ could not be determined.

TOMIS/LIBR.[2]

According to Mr. Snow, the disciplinary board acted arbitrarily and illegally in convicting him of the charged offense in light of the fact that the TCIX personnel failed to follow the TDOC and TCIX mandatory procedures of searching vacant cells before relocating inmates. Mr. Snow further alleged in his petition that he was denied due process of law because (1) the disciplinary board failed to make findings of fact to support its decision to find him guilty of the charged offense; and (2) an informant told TCIX officials about the location of the knives and the TCIX officers failed to write an independent assessment of the confidential informant's reliability as required by the TDOC Uniform Disciplinary Procedures Policy 502.01(VI)(L)(4)(g). Mr. Snow requested the court to provide the following relief: issue the writ of certiorari; order the State to file the certified record of the proceedings; and vacate his conviction for possession of a deadly weapon, order the restoration of all sentence reduction credits, and order the return of all monetary fees and other privileges taken away as a result of the disciplinary conviction.

The State did not oppose the court's granting of the writ. The court entered an order granting Mr. Snow's petition for the writ, and it directed the State to certify the administrative record and provide it to the court. Mr. Snow then requested, pursuant to Tenn. R. Civ. P. 34, that the State produce documents and that he be permitted to amend his complaint based on the information gleaned from the documents produced. The documents Mr. Snow sought included the following:

1) All records, computerized or otherwise, and preferably in print out format, documenting all cell changes conducted on 29, 30, and 31 May 2012 at the Turney Center Industrial Complex;

2) All records, computerized or otherwise, and preferably in print out format, documenting searches conducted on any or all cells in Units 1, 2, 3, or 4 on 29, 30 or 31 May 2012;

3) A copy of the minutes from the TCIX Inmate Council Meeting for the month of August 2015;

4) The TOMIS records listing the names and TDOC numbers of all inmates who have been assigned to cell 2A-230 from January 2010 until 31 May 2012;

5) The disciplinary print screen listing the inmates' disciplinary records

[2]The record contains the TDOC policies, but it does not include the TCIX local policy Mr. Snow cites.

generated from request 4, if that conviction resulted in the inmate being moved out of the cell, either by being "locked up" prior to being found guilty of a disciplinary offense, or being found guilty of a disciplinary offense and then being locked up in HSA;

6) The gang status of the above listed inmates, whether they are unaffiliated, suspected, associates or confirmed gang members and what that affiliation is, *i.e.* Aryan Nation, WAR, etc.;

7) A copy of any and all memoranda issued by TCIX administrative staff which detail, direct or order the seizure or confiscation of, or directing the institution staff to gather and remove all stainless steel dust mop heads and their constituent components; and

8) A copy of any documentation regarding the information that Corporal Robert Story, a member of the Turney Center CERT (Correctional Emergency Response Team) received and acted upon when he searched the door of 2A-230, including any specific information regarding a description of what contraband was expected to be discovered, or a statement from Cpl. Story regarding the information that he received, as well as the context in which he received it, *i.e.* a concerned citizen, a drug addict trading the information for a pass on a positive drug screen, etc.

The State objected to Mr. Snow's request for documents, arguing that the trial court is not entitled on a petition for a writ of certiorari to inquire into the intrinsic correctness of the board's decision and that its review is limited to the record of the administrative proceeding below. According to the State, the documents Mr. Snow requested would not assist the court to determine whether the board acted illegally, arbitrarily, or outside of its jurisdiction.

The trial court denied Mr. Snow's request for documents on May 16, 2016, stating:

Discovery is not allowed in a writ of certiorari unless the documents sought specifically show the arbitrariness or legality of the disciplinary hearing. The requests made in Petitioner's motion are either not permissible, not possible, or not needed.

After consideration of the request and the record as a whole the Court finds the request is not well taken and is respectfully DENIED.

Then, on May 17, 2016, the court dismissed Mr. Snow's common law writ of certiorari by Memorandum and Order. The court acknowledged Mr. Snow's contention

that neither his cell nor the door to his cell were searched prior to his placement in cell 2A-230 and that an inmate who lived in the cell prior to him testified in his cellmate's case that the knives were in the door before Mr. Snow was placed there. Despite Mr. Snow's argument, the court wrote:

> Petitioner makes and made compelling arguments. However, it is not within the power of this Court to reweigh the evidence and second guess the decision of the lower board. The duty of this Court is to determine whether the decision was based on material evidence and that the decision was not made fraudulently, arbitrarily, or illegally.

The court found that Mr. Snow was given his day in court at the disciplinary hearing and noted that the disciplinary board determined the knives belonged to Mr. Snow "based on the fact they were found in the door of his cell and looked relatively new." The court found the policies governing the searching of inmates' cells are not part of the Uniform Disciplinary Procedures "and thus are not grounds for reversal."

Turning to Mr. Snow's other arguments, the court wrote the following concerning the confidential informant: "Due process does not require an independent write-up of an informant's reliability nor does it require the Uniform Disciplinary Procedures be followed." With regard to the evidence the board relied upon in rendering its ultimate decision, the trial court wrote:

> Petitioner was punished by a fine and the loss of three months of sentence reduction credits which implicate Due Process. *Garrard v. Tennessee Dep't of Correction*, 2014 WL 1887298, at \*8 (Tenn. Ct. App. 2014). Petitioner alleges his Due Process rights were violated because he alleged the board did not include a written statement indicating what evidence the factfinder relied upon and the reasons for the disciplinary actions taken. In support of his allegations, Petitioner cites *Garrard v. Tennessee Department of Correction*, where the Court of Appeals did hold that a summary that only included the alleged policy violation and punishment was constitutionally deficient. *See id.* at 10. However, that case is distinguishable from the current case before the Court because the summary in this case does state that [the] board relied upon the disciplinary report attached in the record and the two knives found within the door of Petitioner's cell. Thus, while the board did not write a lengthy report on its findings of fact, it does state the evidence it relied upon in making its decision.

Concluding that there was "no evidence that the hearing was conducted arbitrarily or illegally," the court explained that it could not substitute its judgment for that of the board. As a result, the court dismissed Mr. Snow's common law writ of certiorari.

Mr. Snow appeals the trial court's dismissal of his common law writ. He argues the trial court erred by (1) denying him the opportunity to support his allegations through discovery; (2) concluding that evidence introduced at the hearing supported the board's determination that he was guilty of the charged offense by a preponderance of the evidence; (3) failing to make findings of fact and entering them into the record to support its ultimate decision to find Mr. Snow guilty and to impose the discipline that it did; and (4) failing to comply with TDOC Policy 502.01(V)(L)(4)(g), regarding the use of confidential information from an informant. Mr. Snow also argued he was denied due process of law and a fair hearing because the board ignored the institutional staff's failure to follow the internal policies requiring empty cells to be searched during a reassignment before different inmates are assigned to the cells.

## II. ANALYSIS

The common-law writ of certiorari is the procedural vehicle prisoners may use to obtain a review of decisions by prison disciplinary boards, parole eligibility review boards, and other similar administrative tribunals. *Willis v. Tenn. Dep't of Corr.*, 113 S.W.3d 706, 712 (Tenn. 2003); *see* Tenn. Code Ann. § 27-8-101 (providing that the writ may be granted where an inferior tribunal, board, or officer exercising judicial functions exceeds jurisdiction or acts illegally and no other plain, speedy, or adequate remedy is available); *Davison v. Carr*, 659 S.W.2d 361, 363 (Tenn. 1983) ("Common law certiorari is available where the court reviews an administrative decision in which that agency is acting in a judicial or quasi-judicial capacity."). Granting a petitioner's request for a writ is not an adjudication; it is simply an order by the trial court directing the administrative tribunal to file its record of proceedings to enable the court to determine whether the petitioner is entitled to relief. *State v. Lane*, 254 S.W.3d 349, 354 (Tenn. 2008); *Keen v. Tenn. Dep't of Corr.*, No. M2007-00632-COA-R3-CV, 2008 WL 539059, at *2 (Tenn. Ct. App. Feb. 25, 2008); *Hawkins v. Tenn. Dep't of Corr.*, 127 S.W.3d 749, 757 (Tenn. Ct. App. 2002).

A reviewing court is not permitted to "(1) inquire into the intrinsic correctness of the lower tribunal's decision, (2) reweigh the evidence, or (3) substitute [its] judgment for that of the lower tribunal" when considering a petition for a common law writ of certiorari. *Keen*, 2008 WL 539059 at *2 (citations omitted); *see also Heyne v. Metro. Nashville Bd. of Pub. Educ.*, 380 S.W.3d 715, 729 (Tenn. 2012); *Willis*, 113 S.W.3d at 712. Rather, the scope of review is limited to determining "whether the disciplinary board exceeded its jurisdiction or acted illegally, fraudulently, or arbitrarily." *Willis*, 113 S.W.3d at 712 (citing *Turner v. Tenn. Bd. of Paroles*, 993 S.W.2d 78, 80 (Tenn. Ct. App. 1999)); *South v. Tenn. Bd. of Paroles*, 946 S.W.2d 310, 311 (Tenn. Ct. App. 1996)). This involves a question of law, not of fact. *Harding Acad. v. Metro. Gov't of Nashville & Davidson Cnty.*, No. M2004-02118-COA-R3-CV, 2006 WL 627193, at *4 (Tenn. Ct. App. Sept. 25, 2006). "'The scope of review by the appellate courts is no broader or

more comprehensive than that of the trial court with respect to evidence presented before the Board.'" *Id.* (quoting *Watts v. Civ. Serv. Bd. for Columbia*, 606 S.W.2d 274, 277 (Tenn. 1980)).

A common law writ of certiorari can be used to correct "(1) fundamentally illegal rulings; (2) proceedings inconsistent with essential legal requirements; (3) proceedings that effectively deny a party his or her day in court; (4) decisions beyond the lower tribunal's authority; and (5) plain and palpable abuses of discretion." *Willis*, 113 S.W.3d at 712 (citing *State v. Willoughby*, 594 S.W.2d 388, 392 (Tenn.1980)); *see also Abbington Ctr., LLC v. Town of Collierville*, 393 S.W.3d 170, 175 (Tenn. Ct. App. 2012). In other words, a trial court's review is focused on the manner in which the lower tribunal's decision was reached rather than its intrinsic correctness. *Garrard v. Tenn. Dep't of Corr.*, No. M2013-01525-COA-R3-CV, 2014 WL 1887298, at *4 (Tenn. Ct. App. May 8, 2014) (citing *Powell v. Parole Eligibility Rev. Bd.*, 879 S.W.2d 871, 873 (Tenn. Ct. App. 1994)); *Keen*, 2008 WL 539059, at *2 (citing *Hall v. McLesky*, 83 S.W.3d 752, 757 (Tenn. Ct. App. 2001)). If the tribunal reaches its decision in a manner that is either unlawful or unconstitutional, the decision is subject to judicial review. *Powell*, 879 S.W.2d at 873.

A trial court's review of an inferior tribunal's decision is normally limited to the record created at the tribunal level. *Adams v. Tenn. Dep't of Corr.*, No. M2013-00370-COA-R3-CV, 2014 WL 4536557, at *3 (Tenn. Ct. App. Sept. 11, 2014). However, "new evidence is admissible on the issue of whether the administrative body exceeded its jurisdiction or acted illegally, capriciously or arbitrarily." *Davison*, 659 S.W.2d at 363 (citing *Watts*, 606 S.W.2d at 276-77); *see also Adams*, 2014 WL 4536557, at *3; *Moore v. Metro. Bd. of Zoning Appeals*, 205 S.W.3d 429, 435 (Tenn. Ct. App. 2006); *Hunter v. Metro. Bd. of Zoning Appeals*, No. M2002-00752-COA-R3-CV, 2004 WL 315060, at *2 (Tenn. Ct. App. Feb. 17, 2004). Our Supreme Court has stated that the terms "[a]buse of discretion," "arbitrariness," "capriciousness," and "unreasonableness" are often used to mean the same thing. *McCallen v. City of Memphis*, 786 S.W.2d 633, 641 (Tenn. 1990) (citing 8A E. McQuillen, THE LAW OF MUNICIPAL CORPORATIONS, § 25.310, at 562 (3d ed. 1986)).

A. <u>Mr. Snow's Request for Documents</u>

We review the trial court's decision denying Mr. Snow's request for documents under the abuse of discretion standard. *Weaver v. Knox Cnty. Bd. of Zoning Appeals*, 122 S.W.3d 781, 784 (Tenn. Ct. App. 2003). The Tennessee Supreme Court has described this standard thusly:

> A trial court abuses its discretion only when it "applie[s] an incorrect legal standard, or reache[s] a decision which is against logic or reasoning that cause[s] an injustice to the party complaining." *State v. Shirley*, 6 S.W.3d

243, 247 (Tenn. 1999). The abuse of discretion standard does not permit the appellate court to substitute its judgment for that of the trial court. *Myint v. Allstate Ins. Co.*, 970 S.W.2d 920, 927 (Tenn. 1998).

*Eldridge v. Eldridge*, 42 S.W.3d 82, 85 (Tenn. 2001).

The administrative record in this case does not contain a transcript of the hearing or any of the appeals, making it difficult for us to review the administrative procedures. A document entitled "Disciplinary Report Hearing Summary" reflects that Corporal Story was asked the following questions:

Q: On the door did you have to pry the paint loose?
A: No.

Q: How deep were the knives?
A: Bout a foot to the 1st and the 2nd was 8 inches.

Q: Did you have a reason to go there?
A: Yes.

Another document entitled "Disciplinary Report Appeal," which is dated August 16, 2015, appears to be part of Mr. Snow's administrative appeal to the warden, and it contains a section called "Grounds for Appeal." In this section, Mr. Snow wrote:

The inside of cell doors are not inspected prior to inmates moving in them, so it leaves the possibility that the items could have been inside the door before he moved in the cell.

The only place searched in Mr. Snow's cell was his door and CERT Story testified that it was confidential information which led them to the search. Taking that into consideration it is a good possibility that the "confidential source" is either responsible for the items found inside the door or knows who is responsible for them.

Then, in another document entitled "Disciplinary Report Appeal," dated August 27, 2015, Mr. Snow identified additional grounds for his administrative appeal to the commissioner. In this document, Mr. Snow identified a TCIX policy requiring that vacant cells to be searched and inspected before they are occupied by a new inmate and that the cell search results be entered into the TOMIS system. He also stated:

During the hearing of [my cellmate] on this issue, Cpl. Story was asked specifically if they search inside the doors, and when a cell becomes empty before a new inmate is assigned, and his testimony was:

- 9 -

"We do not typically do this."

This was not done in this case. Hundreds of moves were made in 1 or 2 days. Their inaction caused me and my celly to be responsible beyond any control of our own.

My record prior to this was perfect for 9 years. Shift commanders, unit managers, even the Chief of Security knows this is not mine or my celly's. When I asked how can I possibly protect myself from this, they said "There is No Way."

After filing his petition for writ of certiorari, Mr. Snow sought to discover documents from the State to prove his allegations, *inter alia*, that the State failed to follow its own policies and procedures regarding the search of empty cells before new inmates were assigned to them. The State contends the trial court acted properly in denying Mr. Snow's request for discovery because the documents requested "would only be relevant to the intrinsic correctness of the conviction – whether Appellant was in fact responsible for the presence of the deadly weapon in his cell." We agree. The reason Mr. Snow wanted the State to produce documents was to show that the prison employees did not adhere to the prison's procedures pertaining to searches of empty cells for the ultimate purpose of showing the knives found in the door to his cell did not belong to him. However, under the common law writ of certiorari, the reviewing court is not allowed to "inquire into the intrinsic correctness of the lower tribunal's decision." *Keen*, 2008 WL 539059 at *2.

In support of his argument, Mr. Snow relies on the case *Adams v. Tennessee Department of Corrections*, No. M2013-00370-COA-R3-CV, 2014 WL 4536557 (Tenn. Ct. App. Sept. 11, 2014), in which the inmate/petitioner filed several motions, including one seeking discovery at the trial court level, as here. *Adams*, 2014 WL 4536557, at *2. The inmate in *Adams* sought the discovery in an effort to establish that the disciplinary board acted arbitrarily, illegally, or capriciously in convicting him of assault by, *inter alia*, violating policies mandated by the Uniform Disciplinary Procedures. *Id.* at *1, 3. Unlike this case, however, the trial court in *Adams* neglected to rule on any of the inmate's pending motions before dismissing his writ. *Id*. at *1. The Court of Appeals in *Adams* reversed the trial court's dismissal of the inmate's writ based on its conclusion that the outcome of the inmate's petition could have been affected "had the trial court granted some or all of the motions." *Id.* In this case, by contrast, the policy Mr. Snow contends the prison employees violated did not pertain to the administrative proceedings, and the trial court ruled on Mr. Snow's motion before dismissing his writ.

Although we are sympathetic to Mr. Snow's argument and desire to establish that the prison employees did not follow the policies regarding searching empty cells, we

have no basis to conclude the trial court abused its discretion in denying his request for documents in this case.

### B. Mr. Snow's Conviction by the Disciplinary Board

Mr. Snow maintains that the trial court did not address all of the issues he raised in his trial brief. Without going through the issues in detail here, we have examined his trial brief and the trial court's decision and are quite satisfied that the trial court left none of the issues he raised unaddressed.

Mr. Snow next contends the disciplinary board erred in finding that the evidence presented at the hearing established his guilt. In support of this argument, Mr. Snow contends Corporal Story presented uncontradicted testimony that the cell doors are not searched when inmates are relocated from one cell to another.[3] Based on this evidence, Mr. Snow argues the board erred in finding him guilty. The record in this case does not indicate, however, that Corporal Story testified at Mr. Snow's disciplinary hearing. In his administrative appeal to the commissioner, Mr. Snow asserted that Corporal Story testified in his *cellmate's* hearing. The disciplinary board that was presented with evidence in Mr. Snow's case must base its decision on evidence presented in Mr. Snow's hearing, not his cellmate's hearing. *See* TDOC Policy 502.01(VI)(L)(4)(k) ("the disciplinary board/hearing officer shall base the decision solely on the information obtained during the hearing process"). Even if the evidence is uncontradicted that the cell doors were not searched, it does not establish that the knives did not belong to Snow. Thus, we conclude this argument by Mr. Snow lacks merit.

Mr. Snow also argues that the disciplinary board erred in basing its decision on its finding that the knife shanks "looked relatively new" and therefore must have been placed in the door relatively recently. He calls this "pure supposition." However, the appearance of the knives is relevant and material. As we explained earlier, we are unable to inquire into the "intrinsic correctness" of the disciplinary board's decision in a common law writ of certiorari proceeding. We are not permitted to reweigh the evidence presented at the hearing. If the record contains "any material evidence to support the board's findings," we must uphold the tribunal's decision. *Jackson v. Tenn. Dep't of Corr.*, No. W2005-02240-COA-R3-CV, 2006 WL 1547859, at *3 (Tenn. Ct. App. June 8, 2006); *see Abbington Ctr., LLC*, 393 S.W.3d at 175-76 (holding that board's action will be upheld "if 'any possible reason exists'") (quoting *McCallen*, 786 S.W.2d at 641). "If no evidence supports the action of the administrative board, then that action is arbitrary." *Harding Acad.*, 222 S.W.3d at 363.

---

[3] Corporal Story is listed as a witness in one document in the record. The quotation from Story that Snow used in his brief is attributed in Snow's appeal documents to the Commissioner as occurring in his cellmate's hearing.

Evidence of the knives inside the door to Mr. Snow's cell along with their appearance and the official report constitute material evidence to support the disciplinary board's findings. Because we are precluded from inquiring into the intrinsic correctness of the board's findings in the common-law writ of certiorari context, Mr. Snow cannot prevail on his argument that the board's action was arbitrary or that the evidence was insufficient to prove his guilt by a preponderance of the evidence.

C. Due Process

Mr. Snow next faults the disciplinary board for failing to make findings of fact and set forth a statement of reasons for its decision convicting him of the charged offense. We note that the TDOC Uniform Disciplinary Procedures only require the disciplinary board to "stat[e] detailed reasons for [its] decision and summarize[e] the evidence which led to such decision." TDOC Policy 502.01(VI)(L)(4)(n)(5).

In *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974), the United States Supreme Court indicated that due process requires that inmates subjected to disciplinary proceedings be afforded "a written statement from the tribunal for the disciplinary actions taken." *See also Littles v. Campbell*, 97 S.W.3d 568, 572 (Tenn. Ct. App. 2002). The board in this case stated that Mr. Snow was "guilty based on report & evidence presented of 2 knives found in the door of inmate Snow's cell." Although the board did not provide a lengthy explanation for its decision, we find it met the minimum requirements of stating detailed reasons for its decision and summarizing the evidence it relied upon. The facts here differ from those of *Garrard v. Tennessee Department of Correction*, No. M2013-01525-COA-R3-CV, 2014 WL 1887298 (Tenn. Ct. App. May 8, 2014), upon which Mr. Snow relies. In *Garrard*, the disciplinary board merely noted the portion of the Uniform Disciplinary Procedures that Mr. Garrard allegedly violated, and it failed to set forth the reasons for its decision. *Garrard*, 2014 WL 1887298, at *9-10.

Next we turn to Mr. Snow's argument regarding the use of confidential information from an informant. Mr. Snow contends Corporal Story received information from a confidential source that there were knives in the door of Mr. Snow's cell and that the rules require Corporal Story to verify the informant's reliability before that information can be used against him. The language of the Uniform Disciplinary Rules upon which Mr. Snow relies states:

Whenever confidential information or confidential security sensitive evidence is utilized by the disciplinary hearing officer/chairperson as a basis for its decision, the TDOC Contemporaneous Record of Confidential Informant Reliability, CR-3510, shall be completed to document the factual basis for the disciplinary hearing officer's/chairperson's finding that the informant and/or security sensitive evidence was reliable. At privately managed facilities, the Commissioner's designee shall also review the

confidential information and initial the form. This form shall be considered confidential and kept as a non-public access record in an area designated by the Warden.

TDOC Policy 502.01(VI)(L)(4)(g). The record does not reflect that the disciplinary board relied on confidential information or confidential security sensitive evidence as a basis for its decision. The TDOC policy Mr. Snow cites does not apply to the receipt of confidential information that may lead to the discovery of contraband. Accordingly, Mr. Snow's reliance on this TDOC policy does not advance his cause.

Finally, Mr. Snow contends he was denied due process because the TCIX employees failed to comply with the policies requiring that searches be made of empty cells before inmates are reassigned to them. "Due process" refers to whether or not Mr. Snow received a fair hearing pursuant to the Uniform Disciplinary Procedures, which are intended "[t]o provide for the fair and impartial determination and resolution of all disciplinary charges placed against inmates . . . ." TDOC Policy 502.01(II)); *see generally Garrard*, 2014 WL 1887298, at *6-10 (discussing due process rights to which inmates subject to disciplinary proceedings are entitled). The *Willis* Court instructs us that:

> A prisoner seeking judicial review of a prison disciplinary proceeding states a claim for relief under common-law writ of certiorari if the prisoner's complaint alleges facts demonstrating that the disciplinary board failed to follow the Uniform Disciplinary Procedures and this failure substantially prejudiced the petitioner.

*Willis*, 113 S.W.3d at 713. As the trial court pointed out, the prison policies requiring searches are not part of the Uniform Disciplinary Procedures and do not come into play when determining whether Mr. Snow was denied due process.

### III. CONCLUSION

For the reasons stated above, the decision of the trial court is affirmed. Costs of this appeal shall be taxed to the appellant, Gregory A. Snow.

_____
ANDY D. BENNETT, JUDGE

- 13 -